The PEOPLE of the State of Colorado ex rel. Robert R. GALLAGHER, Jr., District Attorney In and For the EIGHTEENTH JUDICIAL DISTRICT, Petitioner,

v.

The DISTRICT COURT In and For the COUNTY OF ARAPAHOE, State of Colorado, and the Honorable John P. Gately, one of the Judges Thereof, Respondents.

No. 83SA1.

Supreme Court of Colorado, En Banc.

June 27, 1983.

Robert R. Gallagher, Jr., Dist. Atty., James C. Sell, Chief Deputy Dist. Atty., Littleton, for petitioner.

Davis & Fritsche, William J. Fritsche, Aurora, for respondents.

ROVIRA, Justice.

This is an original proceeding brought by the People (petitioner), pursuant to C.A.R. 21, for a writ to prohibit the respondent trial court from enforcing its order granting the defendant Brewer's motion to suppress the identification testimony of Murray Dugger.[1] We issued a rule to show cause and now discharge the rule.

I.

Ronald Ray Brewer (Brewer) and Sheila Anderson (Anderson) were charged with aggravated robbery, conspiracy to commit aggravated robbery, theft, and felony menacing in connection with armed robberies of the Buckingham Broker restaurant and an Albertson's store in September 1981. At their combined preliminary hearing, Albertson's store manager, Murray Dugger, identified Brewer as the man who robbed the store. He testified that he was face-to-face with Brewer for five to ten seconds at the initial confrontation and subsequently "got another look" for a couple of seconds when he was instructed to turn around and walk to the back of the store.[2] Based in part on Dugger's testimony, the respondent found probable cause to believe that Brewer and Anderson committed both robberies but did not make a separate ruling as to the admissibility of Dugger's testimony. The court subsequently granted defendant's motion for severance as to both the defendants and the counts, which necessitated four separate trials.

At Brewer's June 1982 trial for the Buckingham Broker robbery, the prosecution presented Dugger as a witness for the purpose of establishing the defendant's identity for the similar transaction at the Albertson's store. At an *in camera* hearing, Dugger testified that a person approached him from the rear while he was standing by the store safe and, when he turned, a man with a gun ordered him to turn around. He stated that he was approximately two feet from the robber, the lighting was excellent, and he had four or five seconds to observe the person. He further testified that after the money was taken he was ordered to walk to the back of the store and as he turned he had another four or five seconds to see the man with the gun. Following the *in camera* hearing, the respondent ruled that Dugger's identification was based upon his independent observations of Brewer during the Albertson's robbery and was not tainted.[3] Nevertheless, the respondent re-

1. Although the petitioner originally sought the same relief as to another witness, Patrick Boese, the State has since dropped this request. We discharge the rule to show cause on the issue of Patrick Boese's testimony identifying the defendant.

2. During cross-examination, Dugger stated he had a brief discussion with Boese before testifying. When asked about the conversation, Dugger gave the following testimony:
Q. "Did you talk about the case with Pat [Boese] today while you were seated in the courtroom?
A. "Yes. Just that fact that the man that— with the gun that we recognized him.
Q. "When was that recognition?
A. "The minute I walked into the courtroom.
Q. "And you two discussed that?
A. "Not at that moment, no.
Q. "When did you discuss that you believed what you stated before in answering my question was that you talked about recognizing the man, when did you two have that discussion?
A. "Well, it wasn't much of a discussion, just common knowledge. I looked at him and, you know, we both knew that that was the guy."

3. The district court did not limit its broad ruling that no taint affected Dugger's identification. The hearing transcript reveals that the issue of possible taint arose only as to whether

fused to admit the testimony for purposes of establishing a similar *modus operandi*.[4]

In September 1982, Dugger testified as to the identity of Brewer in the trial of Anderson for the Albertson's robbery.[5] After an *in camera* suppression hearing, the trial court ruled that Dugger's identification was based upon his observations of Brewer during the Albertson's robbery and that his identification of Brewer's photograph was based upon independent recollection. The court also ruled that there was no undue suggestion in the manner in which the photographic lineup had been conducted and Dugger's identification of Brewer's photograph was without taint.

On December 13, 1982, during an *in camera* suppression hearing preceding Brewer's trial on the Albertson's robbery charge, Dugger testified for yet a fourth time and identified Brewer as the man who robbed him. He testified that just after 7:30 a.m. on August 6, 1981, as he was preparing to return the cash receipts from the previous day to the safe, he was aware of a person standing behind him. He turned to ask the person if he needed help and was able to observe the man for approximately two seconds.[6] The man waved a blue, small-caliber handgun at him and told him to face the safe and be quiet, whereupon a young, slender black woman came forward and put the money into a large, powder-blue purse. After she walked out of the store, the man told the manager to walk to the back of the store. As he turned, Dugger started to shut the safe door, which prompted the robber to command him to stop, giving him another brief opportunity to observe the robber. The manager described the robber as close to six-feet tall, thin, black, with a high forehead, and muttonchops. No distinct scars or facial characteristics otherwise distinguished his unshaven face. He wore blue jeans or dark slacks and a purple shirt. The manager could not recall the style of the shirt.

Although the manager's testimony at the December 13th suppression hearing was substantially identical to his prior testimony, the trial court suppressed it. The basis for its ruling was that the state had failed to show by clear and convincing evidence that the manager's opportunity for observation provided an independent basis for his identification. The court found that Dugger had been only 70 to 75 percent certain before the preliminary hearing that the man in the photograph that he had selected was the Albertson's robber, and that he became 100 percent certain in his identification only after seeing Brewer in the courtroom. The court further found that Dugger's identification of Brewer at the preliminary hearing had been tainted because he had seen Brewer dressed in an orange prisoner's jumpsuit in the courtroom. The court concluded that Dugger did not have an independent basis for his increased certainty and ruled that Dugger was seeking confirmation of his identification of Brewer by his inquiry of Patrick Boese at the preliminary hearing when he asked, "Does he look familiar?"[7]

the selection of the photographs from which Dugger made his original identification of the defendant was unconstitutionally suggestive.

4. The *modus operandi* theory can be used to identify one person as the perpetrator of various offenses. *See People v. Honey,* 198 Colo. 64, 596 P.2d 751 (1979).

5. Dugger gave essentially the same testimony he had given at the preliminary hearing and the Buckingham Broker trial of Brewer. He testified that when first accosted by the robber he saw him for four or five seconds and had the opportunity for a second look when he was ordered to the back of the store. He also reaffirmed his identification of Brewer from a photographic lineup and from the preliminary hearing.

6. During the preliminary hearing, Dugger maintained he first saw the defendant for 5 to 10 seconds. In the Buckingham Broker trial and the Anderson trial, he stated that his first observation of Brewer lasted about 4 or 5 seconds.

7. During the preliminary hearing, the defendant's attorney had elicited the following testimony from Patrick Boese, Dugger's coworker and cowitness, about their courtroom conversation before the preliminary hearing commenced:

Q. "Would you relate to the Court, please, your conversation?

The petitioner claims support for a writ of prohibition on three grounds: (1) law of the case, (2) collateral estoppel, and (3) abuse of discretion.

## II.

Petitioner contends that the respondent's prior rulings admitting Dugger's testimony in the Anderson trial and finding his testimony in the Buckingham Broker suppression hearing competent and free of taint became the law of the case. Consequently, he argues, the law of the case doctrine precluded the trial court from granting Brewer's motion to suppress in the Albertson's trial.

■ Although a trial court is not inexorably bound by its own precedents, prior relevant rulings made in the same case are generally to be followed. The law of the case doctrine is applied unless it results in error or is no longer sound due to changed conditions. Vol. 1B Moore's *Federal Practice* ¶ 0.404[4] (2nd ed. 1982). Law of the case, as applied to prior court rulings, "merely expresses the practice of courts generally to refuse to reopen what has been decided." *Messenger v. Anderson,* 225 U.S. 436, 444, 32 S.Ct. 739, 740, 56 L.Ed. 1152 (1912), and has been described as a "discretionary rule of practice," *United States v. United States Smelting, Refining and Mining Co.,* 339 U.S. 186, 70 S.Ct. 537, 94 L.Ed. 750 (1950), when applied to a court's power to reconsider its own prior rulings.[8]

■ Petitioner contends that Brewer and Anderson are identical parties because they were initially charged in a single information and therefore the doctrine applies to the ruling in Anderson's Albertson's trial. This contention is without merit, as the

severance order and separate trials mandate the conclusion that the parties were not identical.[9] Accordingly, since Anderson and Brewer are not identical parties, the law of the case doctrine did not bar the respondent from ruling the Dugger identification testimony inadmissible in Brewer's trial for the Albertson's offense even though it admitted the same testimony in Anderson's trial for the Albertson's robbery.

■ Petitioner further argues that respondent's ruling in Brewer's Buckingham Broker trial, finding Dugger's testimony both competent and untainted, became binding law of the case in the suppression hearing before the Albertson's trial. Respondent's competence findings in the Buckingham Broker case were dicta, however, since Dugger's testimony was ultimately ruled inadmissible on relevancy grounds. Dictum does not become the law of the case. *Barney v. Winona & St. Peter R.R.,* 117 U.S. 228, 231, 68 S.Ct. 654, 655–656, 29 L.Ed. 858 (1886); *see* Note, *Law of the Case,* 40 *Colum.L.Rev.* 268 (1940).

We conclude that since respondent ruled Dugger's testimony inadmissible on relevance grounds, and consequently inadmissible in the Buckingham Broker trial, his comments on the competence of Dugger's testimony were not binding. Thus, the doctrine of law of the case did not prevent respondent from granting Brewer's motion to suppress in the Albertson's trial.

## III.

■ Petitioner also argues that the doctrine of collateral estoppel prevented respondent from granting Brewer's motion to suppress, because in prior proceedings it

A. "We just both agreed that he was the man.
Q. "Can you be more specific about the conversation as to who spoke first and what was said?
A. "No. I mean Murray [Dugger] says, "Does he look familiar to you?" I said, "Yes, he does."
The issue of possible taint of the identification testimony was not raised until the hearing on defendant's motion to suppress.

**8.** This is not to be confused with the effect of an appellate court decision on remand to the district court, where law of the case is more than a discretionary rule. *See Mayer v. Sampson,* 157 Colo. 278, 402 P.2d 185 (1965).

**9.** We express no view on any constitutional question that might be raised by a contrary holding.

found Dugger's identification of Brewer both competent and untainted. Collateral estoppel bars relitigation between the same parties of issues actually determined at a previous trial. *People v. Lewis,* 659 P.2d 676 (Colo.1983); *People v. Horvat,* 186 Colo. 202, 527 P.2d 47 (1974); *see DiBella v. United States,* 369 U.S. 121, 82 S.Ct. 654, 7 L.Ed.2d 614 (1961).

Four elements must be established in order to invoke the doctrine of collateral estoppel. *People v. Hearty,* 644 P.2d 302 (Colo.1982); *Pomeroy v. Waitkus,* 183 Colo. 344, 517 P.2d 396 (1973). First, the issue must be identical to an issue that was actually and necessarily decided at a prior proceeding. Second, there must have been a final judgment on the merits at the first proceeding.[10] Third, there must be identity of parties, or privity between parties, against whom the doctrine is asserted. Fourth, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate the issue in the prior proceeding.

■ We must now determine whether all four requirements are satisfied with respect to either Brewer's Buckingham Broker trial or Anderson's Albertson's trial.[11] In the Buckingham Broker trial, the court initially ruled that Dugger's identification of Brewer was based upon an independent observation of Brewer during the Albertson's robbery and was not tainted, but then refused to admit the testimony on relevance grounds. Consequently, the trial court's ruling on the competence of the testimony was not necessary to its disposition of the motion to suppress, which would have been the same regardless of the decision on competence. Therefore, the ruling on competence in the Buckingham Broker trial does

not meet the first requirement for collateral estoppel.[12]

We also do not believe that the doctrine can be applied to the testimony at Anderson's trial for the Albertson's robbery. There is no identity of parties, because Brewer was not a party to Anderson's trial. The fact that both Brewer and Anderson were charged with the same crime is not sufficient to put them in privity.

### IV.

Petitioner finally contends that because the trial court's order granting Brewer's motion to suppress identification was inconsistent with its prior rulings, the trial court abused its discretion. First, during Anderson's trial for the Albertson's robbery, the respondent found that Dugger's identification of Brewer's photograph was based on his observations and independent recollection of Brewer at the time of the robbery and admitted his testimony into evidence. Second, during Brewer's trial for the Buckingham Broker offense, the respondent held that Dugger's testimony was both competent and untainted because it had an independent basis. This inconsistency, the People argue, constitutes an abuse of discretion.

Inconsistency, however, even in the verdict rendered by a trial judge based on the testimony of the same witness, is not necessarily an abuse of discretion. *See, e.g., Harris v. Rivera,* 454 U.S. 339, 102 S.Ct. 460, 70 L.Ed.2d 530 (1981). In *Harris,* the Supreme Court reversed a court of appeals decision that had overturned a trial judge's conviction of one defendant based on the identical testimony of a witness whose testimony the judge must have disbelieved or questioned in order to acquit the other two defendants in a multi-defendant trial. The

---

**10.** In *Stillings v. Davis,* 158 Colo. 308, 406 P.2d 337 (1965), we stated that "[a] final judgment is defined as one which ends the particular action in which it is entered, leaving nothing further for the court pronouncing it to do in order to completely determine the rights of the parties involved in the proceeding."

**11.** As noted previously, in the preliminary hearing there was no specific ruling on the admissi-

bility of Dugger's testimony. Consequently, we need not address that proceeding.

**12.** Because we find that the determination of competency was not necessary to the decision, we need not determine whether the issues were "identical," or whether the other requirements of the doctrine of collateral estoppel were met.

Supreme Court reinstated the conviction, rejecting the court of appeals' suggestion that the trial judge might have relied on impermissible considerations to reach his conclusion. As in the instant case, the trial judge in *Harris* had not articulated his reasons for reaching different findings on the same evidence. Finding no clear evidence of abuse of discretion, the Court articulated possible valid explanations for the apparent inconsistency. It then found that the trial court committed no error and upheld the presumption that the judge had adhered to basic rules of procedure in reaching inconsistent verdicts.

The Supreme Court evinced great deference to the judgment of the trial court based on the judge's unique opportunity to observe the totality of the courtroom proceedings. The Court pointed out that requiring consistency in findings or verdicts would force judges to make similar holdings for every defendant even though, for example, the demeanor of a witness might have raised a lingering reasonable doubt as to one defendant's guilt. The constitutional right of that defendant to be proved guilty beyond a reasonable doubt would ultimately be abridged. *See Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975).

In this case, even if the trial court erred in its decision to admit the Dugger testimony in the Anderson trial, "there is no reason ... such an error ... should redound to the benefit of the [State]" in Brewer's trial. *See Harris, supra,* 454 U.S. at 347, 102 S.Ct. at 465. Judges may correct in subsequent related proceedings what may have been initial errors in the trial of one defendant, but should articulate the reasons for the modification.

Petitioners have not demonstrated that the trial court abused its discretion, because inconsistency in a court's ruling is not a *per se* abuse of discretion. In the absence of evidence to the contrary, we abide by the well-settled presumption that the decision of the trial court was correct and find no abuse of discretion in the case at bar.

Since we determine that respondent neither abused his discretion nor was barred from granting the motion to suppress, we discharge the rule.