Troy D. JANSSEN, Plaintiff–Appellant,

v.

**DENVER CAREER SERVICE BOARD**
and Denver Department of Aviation,
Defendants–Appellees.

No. 98CA0100.

Colorado Court of Appeals,
Div. I.

April 1, 1999.

Rehearing Denied May 27, 1999.*

---

* Taubman, J., would GRANT in part.

Barry D. Roseman, Denver, Colorado, for Plaintiff–Appellant.

Daniel E. Muse, City Attorney, Ashley R. Kilroy, Assistant City Attorney, Denver, Colorado, for Defendants–Appellees.

Opinion by Judge CASEBOLT.

Plaintiff, Troy D. Janssen, appeals the district court judgment affirming the decision of a hearing officer for the Denver Career Service Board (Board) who had upheld the termination of plaintiff's employment by the City and County of Denver Department of Aviation (Department). Because we conclude that plaintiff has failed to exhaust his administrative remedies, we affirm.

The Department employed plaintiff as a specialty clerk. It received reports that the odor of marijuana had been detected on plaintiff and in the city vehicle that he had driven while on duty, and that his face was flushed, his eyes were dilated, and his behavior was unusual. The Department then required him to submit to a urine test pursuant to City and County of Denver Executive

Order No. 94 (Order). After receiving the test results indicating that plaintiff's urine had tested positive for the presence of marijuana, the Department terminated his employment.

Plaintiff appealed that decision to a hearing officer. After a hearing, that officer found no abuse of discretion by the Department and denied plaintiff's appeal. Plaintiff did not request the Board to reopen or to reconsider the hearing officer's decision. Rather, he sought review in the district court, filing a complaint under C.R.C.P. 106(a)(4).

Contending that plaintiff had failed to exhaust his administrative remedies, defendants filed a motion to dismiss. Although it initially denied the motion, ultimately the trial court agreed with defendant's contention. Nevertheless, it also considered the merits of plaintiff's complaint and affirmed the hearing officer's decision. This appeal followed.

I.

■ Plaintiff contends the court erred in concluding that he had failed to exhaust his administrative remedies. We disagree.

■ The doctrine of exhaustion of administrative remedies serves as a threshold to judicial review. It requires parties in a civil action to pursue available administrative remedies before seeking judicial review. If the parties fail to satisfy the exhaustion requirement, a court is without subject matter jurisdiction to hear the action. *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998).

A principal objective of the exhaustion doctrine is to prevent piecemeal application of judicial relief and to conserve judicial resources. The doctrine also enables the agency to make initial determinations on matters within its expertise and to compile a record that is adequate for judicial review. It affords an agency the opportunity to correct its own errors, thus minimizing the risk of judicial intervention in the administrative process and preserving the agency's autonomy. *See State v. Golden's Concrete Co., supra.*

Agency review of a challenged action is also desirable because it provides a court with the benefit of the agency's considered interpretation of statutes or ordinances applicable to it. *See Kendal v. Cason,* 791 P.2d 1227 (Colo.App.1990).

■ When administrative remedies are provided by statute or ordinance, the statutory procedure must be followed if the matter complained of is within the jurisdiction of the administrative authority. *Horrell v. Department of Administration,* 861 P.2d 1194 (Colo. 1993).

The Denver City Charter § C5.25 established the Board and sets forth the Board's duties. The provision states, in pertinent part, that:

The Career Service Board *shall:*

. . . .

4. Appoint one or more hearings officers to hear and decide appeals by employees . . . from the administrative actions of officers and employees relating to personnel matters, in accordance with personnel rules adopted or to be adopted by the Career Service Board, and, at such hearings, receive evidence, determine the facts de novo, and *issue a decision which shall be a final order, subject to the decision being stayed or reconsidered by the Career Service Board.*

5. *Reopen and reconsider,* in accordance with personnel rules adopted or to be adopted by the Career Service Board, a decision of a hearings officer when the party requesting reopening and reconsideration submits written argument or evidence which establishes that (a) new and material evidence is available that was not available when the appeal was heard by the hearings officer, or (b) *the decision of the hearings officer involves an erroneous interpretation of the personnel rules of the Career Service Board,* or (c) the decision of the hearings officer is of a precedential nature involving policy considerations that may have effect beyond the case at hand. The Career Service Board shall have the authority to stay the decision of a hearings officer.

(emphasis added)

Plaintiff argues that, because Denver City Charter §. C5.25(4) expressly states that the hearing officer's decision "shall be a final order," he was not required to request reopening or reconsideration from the Board before seeking judicial review. We disagree.

■ We note initially that the doctrine of finality is conceptually distinct from the doctrine of exhaustion of administrative remedies. *See Darby v. Cisneros,* 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993) (finality requirement is concerned with whether the initial decision-maker has arrived at a definitive position on the issue that inflicts an actual injury; exhaustion refers to procedures by which an injured party may seek review). A "final decision" in this context means one that marks the consummation of the agency's decision-making process; it must not be one that is tentative or interlocutory in nature. *See Bennett v. Spear,* 520 U.S. 154, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997).

However, to the extent that finality plays a role here, Charter § C5.25(4) also makes a hearing officer's decision expressly subject to stay and reconsideration by the Board when the circumstances set forth in Denver City Charter § C5.25(5) are present. Indeed, the entire provision, when read in context, states that the Board "shall . . . reopen and reconsider . . . when . . ." one of the three circumstances is present. The use of the word "shall" is presumed to connote a mandatory meaning. *Burns v. Board of Assessment Appeals,* 820 P.2d 1175 (Colo.App.1991).

Plaintiff's "finality" argument is also defeated by Denver Career Service Rule § 19–50, which states that: "If the Career Service Board has reopened a decision of the Hearings Officer for reconsideration, the appellate decision rendered by the Board shall constitute the final decision for purposes of requesting judicial review." Hence, in those situations in which one or more of the three grounds for review noted in the Charter are applicable, the Board's decision, not that of the hearing officer, will be the order subject to judicial review. It follows, therefore, that a reopening by the Board means that the hearing officer's decision is not a "final" or-

der that is subject to judicial review until the Board renders its decision.

Concerning the exhaustion issue, we interpret the Charter to require Board review when one or more of the three grounds contained in Charter § C5.25(5) is asserted by the party seeking review. *See Brooke v. Restaurant Services, Inc.,* 906 P.2d 66 (Colo. 1995) (claimant required to exhaust administrative remedies for claims asserted when such are covered by anti-discrimination act; exhaustion not required for common law claims not covered); *Horrell v. Department of Administration, supra* (when administrative remedies are provided by statute, the statutory procedure must be followed if the matter complained of is within the jurisdiction of the administrative authority).

Our interpretation is supported by the nature of the circumstances described in Charter § C5.25(5). Each represents a particular instance in which further agency review is highly desirable before submitting the matter to judicial scrutiny. For example, when new material and evidence that were not considered by the hearing officer become available, the agency cannot be said to have considered the issue fully, nor can it be said with certainty that a complete record will exist which fully presents the issue for judicial review.

When a hearing officer's interpretation of a personnel rule is alleged to be erroneous, the Board upon review applies its expertise to interpret its own organic ordinances and rules. And, when a decision has a precedential nature or impact involving policy considerations that may have effect beyond the case at hand, requiring review by the Board will allow it to consider potential ramifications within its own agency structure or purview about which a reviewing court may have little, if any, knowledge.

To construe "exhaustion" in these three situations to be optional would negate the ability of the Board to interpret, in the first instance, its own applicable rules, orders, regulations, and enabling provisions. It would also prevent the Board from correcting the errors of its own hearing officer. A different construction would not only prevent the Board from employing and applying its expertise but it would also trigger a premature exercise of judicial review in a piecemeal fashion before an issue has been fully explored within the agency's own decision-making framework.

Nor are we persuaded that Denver Career Service Rule 19–31 dictates a contrary conclusion. That provision states, in pertinent part:

> According to paragraph C5.25 of the Denver City Charter, number 4, a party may request the Career Service Board to re-open and reconsider a decision by the Hearings Officer only on the following grounds ...

Plaintiff points to the seemingly permissive language that a party "may request" reopening. He argues this indicates that the Board interprets the Charter provision to make further agency review optional. However, this phrase is qualified by the words "only on the following grounds." When read in context, this clause *limits* the review available. It enables further agency review only in the three described circumstances; if the determination does not involve one of those three situations, no further agency review is even accessible, and immediate resort to judicial review is therefore mandated.

Accordingly, we hold that the Charter requires exhaustion when the matter asserted falls within one of the three circumstances stated in Charter § C5.25(5).

Here, in his C.R.C.P. 106(a)(4) complaint seeking judicial review, plaintiff asserted that the hearing officer had abused her discretion by: (1) concluding that reasonable suspicion existed that plaintiff was subject to the effects of an illegal drug such that drug testing was warranted; (2) concluding that the test results received from an outside testing laboratory were, in fact, based on a sample provided by plaintiff, when there was insufficient evidence of chain of custody; and (3) affirming the Department's decision to terminate his employment. Because these contentions essentially seek review concerning the sufficiency of the evidence, they would not, at first blush, appear to trigger the exhaustion requirement.

However, when defendants filed a motion to dismiss, contending that plaintiff had failed to exhaust his administrative remedies, plaintiff fully developed his contentions. He responded first by citing the text of the Order's prohibition concerning illegal drugs and the text of Denver Career Service Rule 16–22(10) (Rule 16–22(10)) describing what constitutes just cause for immediate dismissal. He then argued that the hearing officer's decision was an abuse of discretion because neither the Order nor Rule 16–22(10) allows an agency to terminate the employment of a certified city employee merely because the agency's supervisors believe that a particular test result was generated from a sample of that employee's urine. He asserted that the Order and Rule 16–22(10) prohibit the actual "presence" of an illegal drug, not the existence of a supervisor's belief in that presence.

He also argued that the Order prohibits the presence of an illegal drug within the body at any time only for classified service employees and deputy sheriffs of the Department of Safety. For every other city employee including himself, plaintiff argued, that section of the Order and Rule 16–22(10) prohibit an employee from being subject to the effects of illegal drugs *only if* such use or influence adversely affects the safety of co-workers or members of the public, the employee's job performance, or the safe and efficient operation of the City facility.

Finally, plaintiff asserted that the hearing officer had failed to make a finding that his alleged consumption of marijuana affected the safety of co-workers or members of the public, his job performance, or the safe and efficient operation of the facility. Plaintiff argued that such a finding was required because, under his interpretation of Rule 16–22(10) as noted above, an employee is not prohibited from being affected by illegal drugs unless such use or influence adversely affects the safety of co-workers or members of the public, the employee's job performance, or the safe and efficient operation of the City facility.

In our view, these expanded assertions claim that the hearing officer had erroneously interpreted the personnel rules of the Board and the text of the Order. All of plaintiff's arguments involve the interpretation of Rule 16–22(10), *i.e.,* what constitutes just cause for immediate dismissal; whether the agency can fire a certified employee merely because the agency's supervisors believe that a test result came from a sample of that employee's urine; whether the Rule prohibits only the actual "presence" of an illegal drug; and whether the Rule prohibits an employee from being "subject to the effects" of illegal drugs only if "such use or influence adversely affects the safety of co-workers or members of the public, the employee's job performance, or the safe and efficient operation of the City facility."

Therefore, because plaintiff contended that the hearing officer had erroneously interpreted the personnel rules of the Board, the hearing officer's decision was subject to reopening and reconsideration by the Board. *See* Denver City Charter C5.25; Denver Career Service Rule 19–30. Such reopening and reconsideration provides plaintiff with a complete, plain, speedy, and adequate remedy because the Board has full authority to stay and reverse the hearing officer's decision. Hence, judicial review was not yet available because plaintiff had not exhausted his administrative remedies. *See* C.R.C.P. 106(a)(4) (relief available only if there is no plain, speedy, and adequate remedy otherwise provided by law); *State v. Golden's Concrete Co., supra.*

## II.

■ Alternatively, plaintiff contends that he is exempt from the exhaustion requirement. Again, we disagree.

■ There are exceptions to the exhaustion of remedies requirement. As pertinent here, the doctrine has no application when: (1) the administrative agency does not have authority to pass on every question raised; and (2) there is grave doubt that the administrative agency has the authority to pass on the question raised. *Gramiger v. Crowley,* 660 P.2d 1279 (Colo.1983).

■ Thus, a party seeking review of the constitutionality of an agency's enabling legislation need not exhaust administrative rem-

edies. *Fred Schmid Appliance & Television Co. v. City & County of Denver*, 811 P.2d 31 (Colo.1991). Likewise, a party challenging the constitutionality of an agency's decision is not required to exhaust administrative remedies. *Collopy v. Wildlife Commission*, 625 P.2d 994 (Colo.1981).

Here, plaintiff asserts on appeal that defendants violated his constitutional rights by requiring him to submit to a drug test under the Order without having reasonable suspicion of on-duty use. Such an assertion, however, does not challenge the constitutionality of the Order. Rather, it challenges the agency's interpretation of the Order and the way the Order was applied to plaintiff. Such challenge was within the agency's authority to hear. *See Horrell v. Department of Administration, supra*, 861 P.2d at 1198 n. 4 (a board may evaluate whether an otherwise constitutional statute has been unconstitutionally applied with respect to a particular personnel action); *Kendal v. Cason, supra* (agency review is appropriate to allow agency to interpret statute applicable to it in the first instance).

Accordingly, we reject this contention.

### III.

■ Plaintiff asserts that the doctrine of law of the case precluded the trial court from changing its initial ruling in which it denied defendant's motion to dismiss for failure to exhaust administrative remedies. Again, we disagree.

■ The doctrine of the law of the case is a discretionary rule of practice directing that prior relevant rulings made in the same case generally are to be followed. *Gavend v. Malman*, 946 P.2d 558 (Colo.App.1997). It applies unless the court, in its discretion, determines that its former ruling is no longer sound because of changed conditions, it needs to correct its previous ruling because of a legal or factual error, an intervening change in the law has occurred, or manifest injustice would result from its original ruling. *Verzuh v. Rouse*, 660 P.2d 1301 (Colo.App. 1982).

Plaintiff argues that the trial court was bound by the initial denial of defendants'

previous similar motion to dismiss. However, that denial occurred at the pleadings stage before plaintiff had fully developed and established his assertions concerning the hearing officer's interpretation of the Career Service Rules. Thus, the first ruling was no longer sound because of changed conditions. Moreover, the law of the case doctrine does not apply when, as here, an earlier ruling would result in error. *See People ex rel. Gallagher v. District Court*, 666 P.2d 550 (Colo.1983).

The judgment of dismissal is affirmed.

Judge METZGER, concurs.

Judge TAUBMAN, specially concurs.

Judge TAUBMAN specially concurring.

I concur with the majority that the judgment of the district court should be affirmed. However, I would reach that result on an entirely different basis. In my view, plaintiff did exhaust his administrative remedies. Thus, I find it necessary to address the merits of his claims, but upon doing so, I perceive no error in the termination of plaintiff's employment. Also, I concur with the majority's analysis in part III.

### I.  Exhaustion of Administrative Remedies

Plaintiff argues that the hearing officer's denial of his appeal of the Department of Aviation's decision to terminate him was a final decision for purposes of judicial review. He contends that, because a reopening or reconsideration of the hearing officer's decision was optional, he had exhausted his administrative remedies, and thus, filing a complaint under C.R.C.P. 106(a)(4) for review in the district court was appropriate.

However, the majority holds that, under the circumstances at issue, the language contained in the Denver City Charter (Charter) and in the Denver Career Service Rules (Rules) required the plaintiff to seek reconsideration of the hearing officer's decision my interpretation of the Charter and the Rules leads me to conclude to the contrary.

The Charter, as the majority notes, established the Denver Career Service Board and Denver City Charter § C5.25 delineates the

Board's duties. That provision states, in pertinent part:

The Career Service Board *shall:*

. . .

4. *Appoint one or more hearings officers* to hear and decide appeals by employees and by applicants for employment in the Career Service from the administrative actions of officers and employees relating to personnel matters, in accordance with personnel rules adopted or to be adopted by the Career Service Board, and, at such hearings, receive evidence, determine the facts de novo, *and issue a decision which shall be a final order, subject to the decision being stayed or reconsidered by the Career Service Board.*

5. *Reopen and reconsider,* in accordance with personnel rules adopted or to be adopted by the Career Service Board, a decision of a hearings officer *when the party requesting reopening and reconsideration submits written argument or evidence which establishes that* (a) new and material evidence is available that was not available when the appeal was heard by the hearings officer, or (b) the decision of the hearings officer involves an erroneous interpretation of the personnel rules of the Career Service Board, or (c) the decision of the hearings officer is of a precedential nature involving policy considerations that may have effect beyond the case at hand. The Career Service Board shall have the authority to stay the decision of a hearings officer. (emphasis added)

Additionally, Denver Career Service Rules 19–31 reads, in pertinent part:

According to paragraph C5.25 of the Denver City Charter, number 4, a party *may* request the Career Service Board to reopen and reconsider a decision by the Hearings Officer only on the following grounds . . .

If the language of a statute or regulation is plain, and its meaning unambiguous, it must be interpreted as written. *Williams Natural Gas Co. v. Mesa Operating Limited Partnership,* 778 P.2d 309 (Colo.App.1989).

However, in construing the language of a statute or regulation which is ambiguous, appellate courts may consider the consequences of a particular construction. *See Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992).

Furthermore, where the term "may" is used as opposed to "must," the term refers to authority which is permissive and not mandatory. *See Moffat Coal Co. v. Hilliard,* 117 Colo. 556, 190 P.2d 907 (1948).

The language of the Charter § C5.25 and the Rule 19–31 is clear that a decision issued by a hearing officer is final unless such decision is reopened and reconsidered.

The majority interprets the language in Denver City Charter § C5.25(5) and Rule 19–31 to require that a party request reconsideration of a hearing officer's decision when at least one of three specified circumstances is present. It explains the permissive language in Rule 19–31 as merely limiting the circumstances under which reconsideration is available, and not as creating an optional administrative remedy.

However, I interpret the language of Charter § C5.25(5) to mean that the Board *must* allow reopening and reconsideration of a decision issued by a hearing officer *when* a party requests such a reconsideration. The language of the provision is clear that a hearing officer's decision may be reopened only "when the party requesting reopening and reconsideration submits written argument or evidence which establishes that. . . ." Thus, there is no express requirement that a party seek reconsideration of a hearing officer's decision. Therefore, as plaintiff contends, the language in Charter § C5.25 stating that a hearing officer's decision *shall* be final, coupled with the language in Rule 19–31 that a party *may* request a reopening, creates an optional administrative remedy.

In the alternative, I would hold that the language contained in the Charter and Rule is, at best, ambiguous. The majority's interpretation of the language requires that a party request reconsideration when any one of three specified circumstances is present. Plaintiff's interpretation, on the other hand, is that a reopening is required only when a

party requests it and one of the three circumstances is present. It is, therefore, arguable whether the administrative remedy of reconsideration is mandatory or optional.

I agree with the majority that exhaustion of administrative remedies is necessary to require parties to pursue statutory administrative remedies before seeking judicial review and that required statutory remedies provided for must be followed to avoid the piecemeal application of judicial relief and to conserve judicial resources.

However, when a level of administrative review is clearly optional or, at best, not clearly mandatory, a judicial decision requiring exhaustion of such level of administrative review neither conserves judicial resources nor instills confidence in the efficacy of administrative remedies. In such circumstances, requiring exhaustion in such circumstances creates a trap for the unwary litigant and unnecessarily results in protracted litigation.

The cases on which the majority relies, *State v. Golden's Concrete Co.*, 962 P.2d 919 (Colo.1998) and *Horrell v. Department of Administration*, 861 P.2d 1194 (Colo.1993), do not address whether parties are required to pursue optional administrative remedies prior to seeking judicial review. Moreover, the general requirement of exhaustion should not apply where, as here, it is not clear based upon a reading of the Charter and the Rule what is required of a party prior to seeking judicial review.

The potential trap for a litigant faced with such an administrative scheme is illustrated by what happened here.

Even if plaintiff had requested a reconsideration, the Board would not have heard his case. As the majority notes, plaintiff's complaint seeking judicial review rested on challenges to the sufficiency of the evidence on which the decision of the hearing officer was based, and would not have triggered the exhaustion requirement under the majority's own interpretation of the administrative scheme. However, the majority asserts that plaintiff's *response* to defendant's motion to dismiss developed his contentions more fully, thereby transmogrifying his allegations into

claims that the hearing officer had erroneously interpreted the personnel rules. Thus, according to the majority, plaintiff's claims, as discussed in his response to the motion to dismiss, fell within Charter § C5.25 and required plaintiff to seek reconsideration of the hearing officer's decision.

Thus, the majority would measure the need to exhaust administrative remedies not by what plaintiff alleged in his C.R.C.P. 106 complaint, which he presumably would have asserted in a motion for reconsideration, but by what plaintiff argued in response to defendant's motion to dismiss. Therefore, because the consequence of the majority's interpretation is inconsistent with notions of judicial efficiency, its interpretation should be avoided. *See Colorado State Board of Medical Examiners v. Saddoris, supra.*

Moreover, provisions of both the state Administrative Procedure Act (APA) and the federal APA, 5 U.S.C. § 551, et seq. (1996), relating to motions for reconsideration, strongly suggest that exhaustion of optional stages of administrative review is not required.

The relevant provision of the state APA, § 24–4–106(2), C.R.S.1998, provides:

Final agency action under this or any other law shall be subject to judicial review as provided in this section, *whether or not an application for reconsideration has been filed, unless the filing of an application for reconsideration is required by the statutory provisions governing the specific agency.* (emphasis added)

The federal APA also addresses the subject of final agency action where a request for reconsideration is optional. Thus, 5 U.S.C. § 704 (1996), entitled, "Actions reviewable," provides:

Except as otherwise expressly required by statute, agency action otherwise final *is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration,* or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative; for an appeal to superior agency authority. (emphasis added)

Thus, where a request for reconsideration is optional, both APAs provide that agency action without resort to an optional reconsideration procedure is final and, therefore, subject to judicial review.

Significantly, in *Darby v. Cisneros*, 509 U.S. 137, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), a unanimous Supreme Court, interpreting 5 U.S.C. § 704, held that a court cannot require a party to exhaust optional administrative remedies where an agency has taken an otherwise final action.

The facts in *Darby* are nearly identical to those here. There, a real estate developer sought judicial review of a determination of the Department of Housing and Urban Development (HUD) debarring him from entering into transactions with all executive branch agencies. HUD rules provided that a hearing officer's decision would become final in thirty days unless HUD decided to review the decision. The rule also provided that any party could request a review of the hearing officer's determination, but neither party sought further administrative review of the hearing officer's initial decision.

The Court, citing 5 U.S.C. § 704, held, consistent with the plain meaning of the statute, that the HUD hearing officer's decision was final agency action and a court could not require the developer to exhaust an optional administrative remedy. Noting that Congress was concerned with making the exhaustion requirement unambiguous, the Court reasoned that to require exhaustion of an optional administrative remedy would create "a trap for unwary litigants." *Darby v. Cisneros, supra*, 509 U.S. at 147, 113 S.Ct. at 2545, 125 L.Ed.2d at 123.

Here, plaintiff has been caught in the type of trap *Darby* sought to avoid. Rule 19–33 requires that a request for reopening and reconsideration of the decision of a hearing officer be received within ten calendar days of the date of the mailing of the hearing officer's decision. That ten-day period has long since expired. Thus, plaintiff has lost his opportunity to have the decision of the hearing officer reviewed on reconsideration because he did not perceive that such step was mandatory.

Conversely, if plaintiff had sought reconsideration and erroneously had determined that such step was required, he would have had his appeal dismissed for not directly appealing the hearing officer's decision. *See Cheney v. State of Colorado Mined Land Reclamation Board*, 826 P.2d 367 (Colo.App. 1991) (filing of motion to reconsider Board's ruling did not extend time in which to seek judicial review).

Thus, the majority's opinion requires that a party be able to identify correctly those situations which fall under one of the three circumstances in Charter § C5.25(5) or lose his or her opportunity for judicial review. I find this result to be unfair and inconsistent with the plain meaning of the Charter, the Rules, and the state and federal APAs.

As the Supreme Court noted in *Darby v. Cisneros, supra*, litigants should not be placed in the trap created by requiring exhaustion of optional administrative remedies. Further, as noted in 2 K. Davis & R. Pierce, Jr., *Administrative Law* § 15.3 (3d ed.1994):

Most agencies have the discretion to make available a wide variety of procedures for intra-agency review of actions that are or become final in the absence of such review. Those procedures can be either optional or mandatory. *Before Darby, some agencies attempted to have it both ways, i.e., to describe an intra-agency review procedure as optional but then to seek dismissal of a petition for judicial review of an agency action if a party declined to avail itself of the putatively optional administrative appeal.* After *Darby*, that option is not available to an agency in a proceeding governed by the APA. An agency can make an intra-agency review procedure a mandatory prerequisite to the availability of judicial review only by describing it as such in its rules and by providing that the action that is subject to the intra-agency review procedure "meanwhile is inoperative." If the agency simply makes such a procedure available, however, a party can obtain judicial review of an otherwise final action without first pursuing the available intra-agency review procedure ... *In the post-Darby world, a party to an agency proceeding should be*

*able to distinguish between optional and mandatory intra-agency review procedures simply by reading the applicable provisions of statutes and agency rules.* (emphasis added)

Here, there is no such distinction in the Charter or Rules identifying, with specificity, which procedures are mandatory and which are optional. Thus, like plaintiff, other parties will be forced to guess whether the issues they are raising (or might raise in a response to a motion to dismiss) fit within one of the three bases for reconsideration contained in Charter § C5.25(5), and whether to seek reconsideration from the Board or to seek judicial review. The unwary litigant who guesses incorrectly will suffer the consequence of having his or her case dismissed.

Even though the case before us does not involve a state or federal agency, and does not therefore require the application of the state or federal APA, the outcome here should be consistent with *Darby*. To require, as the majority does, exhaustion of an administrative appeal that is not expressly required by rule creates a significant inconsistency in this area of administrative law. Its analysis leads to the anomalous situation in which one set of rules applies to state and federal agencies, and another applies to the Board. *See Foos v. State*, 888 P.2d 321 (Colo.App.1994) (motorist not required to exhaust administrative remedies by requesting reopening of license revocation hearing before seeking judicial review where no legal basis existed for such reopening).

In light of my conclusion that plaintiff had exhausted his administrative remedies, I turn now to the merits of his contentions.

## II. Fourth Amendment

Plaintiff contends the Department violated his Fourth Amendment rights by requiring him to submit to a drug test without having reasonable suspicion of on-duty drug use or influence. I disagree.

Executive Order No. 94 provides, in pertinent part:

Employees may be required to submit to blood, or urine or other alcohol or drug screening where there is reasonable suspicion of illicit use or the employee is under the influence of or impaired by alcohol, or under the influence of or subject to the effects of an illegal drug.

Referrals for testing shall be made whenever a supervisor or safety officer has reasonable suspicion that the employee may be under the influence of alcohol or drugs.

Reasonable suspicion is not a requirement of absolute certainty but is a common sense conclusion about human behavior upon which practical people are entitled to rely. *People in Interest of P.E.A.*, 754 P.2d 382 (Colo. 1988).

Relying on *City & County of Denver v. Casados*, 862 P.2d 908 (Colo.1993), plaintiff asserts that the Order's provisions for testing based on reasonable suspicion do not apply to him because his position was not security or safety sensitive. In *Casados*, upon considering a facial challenge to Executive Order No. 94, the court upheld the constitutionality of the order. In doing so, it interpreted the provision mandating drug screening as not contemplating mandatory drug screening for employees who "do not hold public safety- or security-sensitive positions, based only on reasonable suspicion of off-duty drug or alcohol use or impairment." *City & County of Denver, supra*, 862 P.2d at 914.

However, my review of the record does not support plaintiff's assertion.

As a specialty clerk for the airport, plaintiff was responsible for processing applications for access badges for contractors, vendors, and city employees. While he did not have discretion to allow or deny an individual access to an area of the airport, he did have the responsibility to modify the access an individual was given if the authorization for access had been granted improperly.

Furthermore, plaintiff was responsible for administering a test to individuals seeking access to the airport as a precondition to their receipt of an access badge. Finally, plaintiff was responsible for typing the information from the application for access into a computer database. Therefore, plaintiff's position did involve certain safety-related responsibilities which, if not done properly,

would affect the security of the airport. Thus, application of the Order's provisions to him by the hearing officer was appropriate.

My review of the record also supports a finding of reasonable suspicion to warrant a drug test of plaintiff.

While at work, plaintiff's co-worker smelled an odor of marijuana on plaintiff's person. Another co-worker reported that plaintiff's pupils were dilated and that his face was flushed. Finally, a co-worker with training in the detection of drug use detected the odor of marijuana in an airport vehicle driven by plaintiff. That same employee noticed plaintiff's behavior was different than usual and that plaintiff appeared to be experiencing "rapid mood swings." Based on the record, I find that reasonable suspicion existed to subject plaintiff to a drug test and, therefore, the hearing officer was correct in concluding the Department did not violate his Fourth Amendment rights.

### III.  Substantial Evidence

Next, plaintiff asserts there was not substantial evidence to support the Board's conclusion that he violated Executive Order No. 94 or Denver Career Service Rule 16–22(10). Again, I am not persuaded.

In reviewing the conclusions of an agency, an appellate court must determine whether substantial evidence exists in the record to support such conclusions. *Life Investors Insurance Co. v. Smith,* 833 P.2d 864 (Colo. App.1992).

Substantial evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. *Colorado Municipal League v. Mountain States Telephone & Telegraph Co.,* 759 P.2d 40 (Colo.1988).

Broad deference is accorded the trier of fact in evaluating the credibility of witnesses. *In re Marriage of Foottit,* 903 P.2d 1209 (Colo.App.1995).

Both the Order and the Rule prohibit the use, sale, purchase, transfer or possession of an illegal drug while in a city facility or while performing city business. The Order and Rule also prohibit being under the influence or subject to the effects of an illegal drug if such use or influence adversely affects the safety of co-workers, members of the public, the employees' job performance, or the safe and efficient operation of the city facility.

Even if I assume, as plaintiff alleges, that there was no evidence to support a finding that his being under the influence of drugs adversely affected the safety of the airport, there was evidence to support the conclusion that he had used marijuana at work. Both his person and the airport vehicle he drove smelled of marijuana at around 10 a.m., and he had been at work since at least 7:30 that same morning. This evidence supports the inference that he had used marijuana while at work. Thus, even though the hearing officer did not specifically find that plaintiff had used marijuana at work, there is sufficient evidence in the record to support the hearing officer's conclusion that plaintiff had violated Executive Order No. 94.

I would therefore affirm the district court's judgment that upheld the termination of plaintiff's employment.