The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Kathryn WARREN, a/k/a Kathryn
Sandoval, Defendant–
Appellant.

No. 00CA1398.

Colorado Court of Appeals,
Div. III.

Feb. 28, 2002.

Rehearing Denied April 18, 2002.*

Certiorari Denied Oct. 15, 2002.**

* Roy, J., would grant.

** Justice MARTINEZ and Justice BENDER would grant as to the following issue:

Whether the other bad acts evidence met the requirements of *People v. Spoto*, 795 P.2d 1314 (Colo. 1990), and *People v. Garner*, 806 P.2d 366 (Colo. 1991).

Ken Salazar, Attorney General, Anthony J. Navarro, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Kathryn Warren, a/k/a Kathryn Sandoval, appeals the judgment of conviction entered upon a jury verdict finding her guilty of possessing a schedule II controlled substance, a class four felony. We affirm.

In executing a search warrant at defendant's house, police discovered drug paraphernalia and a usable amount of methamphetamine in her bedroom dresser.

Defendant maintained at trial that the prosecution could not prove that she had placed, or that she otherwise knew about, the methamphetamine in her dresser. In support thereof, defendant pointed to evidence that she lived in the house with two other persons, one of whom shared the bedroom

with her, and that a musical band practiced in the house several times a week.

On the first day of trial, defendant moved to exclude evidence that she had previously given one housemate methamphetamine. Initially, the trial court ruled that the evidence would be admitted as res gestae if the prosecution established that such a transaction occurred recently. Upon learning later that same day, however, that the housemate could not recall when during the prior year defendant gave him methamphetamine, the trial court ruled that the evidence would not qualify as res gestae. Nor, the court determined, would the evidence be admissible under CRE 404(b) because the prosecution had not previously notified the defense of its intent to introduce it at trial.

On the second day of trial, the trial court sua sponte reversed its last decision, holding instead that the lack of pretrial notice would not preclude admission of the housemate's testimony under CRE 404(b). The housemate's testimony was ultimately admitted, and at the conclusion of the trial, the jury found defendant guilty.

## I. Defendant's Other Bad Acts

Defendant raises several contentions about the evidence that she previously supplied her housemate with methamphetamine.

### A. Lack of Pretrial Notice

First, defendant contends that this evidence was inadmissible because the prosecution failed to notify her prior to trial of its intent to introduce the evidence at trial. We disagree.

To date, no Colorado appellate opinion has determined whether pretrial notice of intent to use other bad act evidence is required by CRE 404(b). However, "[t]he traditional and majority view is that the prosecution has no duty to give [pretrial] notice." See Edward J. Imwinkelried, *Uncharged Misconduct Evidence* § 9:09, ch. 9 at 20 (1996).

The supreme court has noted only that CRE 404(b) requires a trial court to make pertinent findings regarding the admissibility of other bad act evidence "before permitting such evidence to come before the jury."

*People v. Garner*, 806 P.2d 366, 372 n. 4 (Colo.1991). In contrast to the statutory provision concerning the admissibility of evidence of other sexual acts, *see* § 16-10-301(4)(a), C.R.S.2001, or Fed.R.Evid. 404(b), nothing in the text of CRE 404(b) requires that the prosecution advise a defendant in advance of trial of its intent to introduce other bad act evidence.

The text of CRE 404(b) is virtually identical to the version of Fed.R.Evid. 404(b) that was in effect before December 1991. *See* Jack B. Weinstein & Margaret Berger, *Weinstein's Federal Evidence* § 404App.01[1], at 404App.–1 (Joseph M. McLaughlin ed., 2d ed.2001). Consequently, federal case law interpreting the pre-December 1991 version of Fed.R.Evid. 404(b) is persuasive in determining the meaning of CRE 404(b). *See People v. Braley*, 879 P.2d 410, 412 (Colo.App.1993)(interpreting CRE 604). Federal courts found no requirement of pretrial notice in that version of the rule. *See United States v. Anderson*, 799 F.2d 1438, 1440 (11th Cir.1986); *United States v. Kendall*, 766 F.2d 1426, 1440–41 (10th Cir.1985)(neither due process nor pre-December 1991 version of Fed.R.Evid. 404(b) required pretrial notice).

In December 1991, a pretrial notice requirement was added to Fed.R.Evid. 404(b) to "reduce surprise and promote early resolution on the issue of admissibility." Weinstein, *supra*, § 404App.03[2], at 404App.–8, – 9. Colorado has not, to date, amended its version of rule 404(b) in a similar manner.

We conclude, based upon the text of CRE 404(b) and the federal court interpretations of a past, but identically worded, version of Fed.R.Evid. 404(b), that CRE 404(b) does not require pretrial notice as a prerequisite for admitting other bad act evidence.

We do not, by our holding here, discount the possibility that there may be circumstances in which pretrial notice, even though not required by CRE 404(b), might be necessary to avoid prejudicial surprise to a defendant. This case, however, does not present such circumstances.

■ The record reflects that defendant was not surprised by the evidence or by the prosecution's attempted use thereof. The affidavit used to obtain the warrant for defendant's arrest contained a statement by the housemate that he had obtained methamphetamine from defendant. And, defendant anticipated the prosecution's use of the evidence at trial: on the first day of trial, she moved in limine to prohibit the prosecution from introducing the evidence. During the hearings on that motion, defendant demonstrated her familiarity with the evidence and with the res gestae and CRE 404(b) arguments surrounding its admissibility.

Consequently, we perceive no error in the receipt of the evidence simply because the prosecution failed to give defendant pretrial notice of its intent to use the evidence at trial.

### B. Trial Court's Reversal of Its Prior Ruling

Next, defendant contends that the trial court's sua sponte reversal of its prior ruling impermissibly undermined her counsel's ability to effectively assist her at trial. We are not persuaded.

■ Under the law of the case doctrine, prior relevant rulings made in the same case generally are to be followed. However, the doctrine "is not a limit on a court's power to revisit an issue if the court feels such review is necessary." 18 James W. Moore et al., *Moore's Federal Practice* § 134.21[1] (3d ed.2001). A trial court may, in its discretion, reconsider and reverse a prior ruling if it determines that "its former ruling is no longer sound because of changed conditions, it needs to correct its previous ruling because of a legal or factual error, an intervening change in the law has occurred, or manifest injustice would result from its original ruling." *Janssen v. Denver Career Serv. Bd.*, 998 P.2d 9, 15 (Colo.App.1999). *See also People v. Dunlap*, 975 P.2d 723, 758 (Colo. 1999); *People ex rel. Gallagher v. District Court*, 666 P.2d 550, 553 (Colo.1983).

■ Here, the trial court recognized that its initial ruling conditioning the admissibility of CRE 404(b) evidence upon prosecutorial pretrial notice was legally erroneous. Consequently, the court acted within its discretion in reversing that ruling and ultimately permitting the evidence to be introduced at trial. *See Chun v. Board of Trustees*, 92 Hawai'i 432, 992 P.2d 127, 136 (2000)(court was not precluded from sua sponte reversing its prior ruling, which was based on an erroneous application of the law).

Defendant's reliance on *People v. Allen*, 885 P.2d 207 (Colo.1994), for the proposition that the trial court could not sua sponte change its decision, is misplaced. In *Allen*, the supreme court did not address the issue whether a court could sua sponte reconsider its own prior ruling. Instead, it held only that the circumstances did not justify one appellate court overruling a prior decision by another appellate court.

Here, the circumstances justified the trial court's reconsideration of its prior ruling because the prior ruling was legally erroneous. *See Pearson v. District Court*, 924 P.2d 512, 515 (Colo.1996)(recognizing that prejudgment orders can be reconsidered at any time and that the law of the case doctrine "is not a rule to perpetuate error")(quoting 1B James W. Moore & Jo Desha Lucas, *Moore's Federal Practice* § 0.404[4.–1], at II–2 (2d ed.1995)).

■ Further, we reject any suggestion that the trial court's reversal of its prior ruling rendered the trial unfair by unduly interfering with counsel's ability to effectively defend defendant. Counsel did not assert this position either when the court reversed its prior ruling or at any other time during the trial itself. As indicated above, counsel clearly anticipated that this evidence might be admitted at trial, and she was familiar with the evidence and the arguments surrounding its admissibility. Additionally, when she selected a jury, it appeared that the evidence might be admitted, and she also successfully moved to preclude any reference by either counsel to the evidence during opening statements. Finally, she cross-examined the housemate about his incentives to testify for the prosecution, and she directed part of her closing argument to attacking the housemate's credibility based on those incentives.

Under these circumstances, we conclude that defendant was in no way deprived of the right to effective assistance of counsel as a result of the court's reversal of its prior order.

## C. Admissibility of the Evidence

Defendant further contends that the trial court erred in admitting the housemate's testimony without (1) requiring the prosecution to articulate a precise evidentiary hypothesis for the testimony and (2) properly analyzing its admissibility under *People v. Garner, supra,* and *People v. Spoto,* 795 P.2d 1314 (Colo.1990). We disagree.

Here, the prosecution sufficiently identified its purpose for eliciting the evidence as "proof of opportunity, preparation, knowledge and identity and absence of mistake." *See People v. Harding,* 17 P.3d 183, 186 (Colo.App.2000)(evidence offered "to establish identity, guilty knowledge, intent, design, and motive").

Further, a trial court has substantial discretion in determining the admissibility of CRE 404(b) evidence, and we will not overturn its determination unless its ruling is manifestly arbitrary, unreasonable, or unfair. *People v. Copeland,* 976 P.2d 334, 337 (Colo. App.1998), *aff'd,* 2 P.3d 1283 (Colo.2000).

Before admitting CRE 404(b) evidence, a trial court must be satisfied by a preponderance of the evidence that the prior bad act occurred and that the defendant committed the act. *See People v. Garner, supra,* 806 P.2d at 373. The trial court must also determine that the evidence is offered for a proper purpose; it is logically relevant to a material issue in the case; its relevance is independent of the intermediate inference that the defendant has a bad character; and its probative value is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto, supra,* 795 P.2d at 1318.

Here, the trial court acknowledged the applicability of the *Garner-Spoto* test and explicitly determined that the evidence was relevant to prove defendant's knowledge and was not unduly prejudicial. In admitting the evidence, the trial court implicitly determined it was satisfied that, by a preponderance of the evidence, the prior act occurred, and that the evidence was proffered for a proper purpose and had relevance independent of any inference of bad character. *See People v. McGraw,* 30 P.3d 835, 838 (Colo.App.2001)(finding that court was satisfied, by preponderance of evidence, that defendant committed other act was implicit in court's ruling that the evidence was admissible); *People v. Copeland, supra,* 976 P.2d at 337 ("Having admitted the evidence, the trial court implicitly found that its probative value was not substantially outweighed by the danger of unfair prejudice.").

Further, we must ultimately reject defendant's assertion that the roommate's testimony could not have had any logical relevance independent of an inference of defendant's bad character.

In order to convict defendant, the prosecution had to establish that she knowingly possessed the methamphetamine. *See People v. Ceja,* 904 P.2d 1308, 1310 (Colo.1995). Defendant argued, in both her opening statement and closing argument, that she did not know that there was methamphetamine in her bedroom dresser.

In *United States v. Tomberlin,* 130 F.3d 1318, 1320–21 (8th Cir.1997), the defendant admitted occupying a bedroom but claimed to have had no knowledge of the methamphetamine and related drug items found therein. In an effort to counter that defense, the prosecution requested and was allowed to introduce evidence of the defendant's prior possessions of drugs. After acknowledging that, like CRE 404(b), "Federal Rule of Evidence 404(b) permits a court to admit evidence of prior acts unless it tends to prove only a defendant's criminal disposition," the Eighth Circuit Court of Appeals upheld the admission of the evidence. The evidence, the court said, was relevant to prove the defendant's knowledge of possession and intent to possess the methamphetamine in his bedroom. *See also Pyle v. State,* 314 Ark. 165, 179, 862 S.W.2d 823, 830 (1993)(where defendant testified he had no prior knowledge of the cocaine in his house, evidence that he had previously traded and used cocaine properly

admitted both as rebuttal and as prior acts to show knowledge).

■ Here, because defendant claimed a lack of knowledge, evidence that she had previously supplied methamphetamine to her roommate tended to make more probable than not that she was indeed aware of the methamphetamine in her bedroom dresser. As such, the evidence was relevant to an issue in the case independent of an inference of bad character. *See* CRE 401 (defining relevant evidence); CRE 404(b)(evidence of other bad acts admissible to show, among other things, knowledge); *United States v. Tomberlin, supra; Pyle v. State, supra.*

■ Although the legitimate probative force of the evidence may not have been compelling, we must accord the evidence its maximum probative value and minimum unfair prejudicial effect. *People v. Loggins,* 981 P.2d 630, 636 (Colo.App.1998). *See also People v. Webster,* 987 P.2d 836, 840 (Colo.App.1998)(evidence of gang activities). Doing so, we are not persuaded that it was manifestly arbitrary, unreasonable, or unfair to admit the evidence under the circumstances of this case.

Accordingly, because we do not conclude the trial court abused its wide range of discretion, reversal is not warranted on this ground.

### D. Limiting Instructions

Defendant further contends that the limiting instructions given in connection with the housemate's testimony were deficient. We are not persuaded.

■ Initially, we note that, because defendant failed either to make a clear and timely objection to any of the limiting instructions or to request additional ones, reversal is not warranted unless plain error occurred. *See People v. Garcia,* 28 P.3d 340, 344 (Colo.2001).

■ Generally, a trial court should instruct the jury on the limited purposes for which CRE 404(b) evidence may be considered at the time the evidence is admitted and again in the closing charge to the jury. *See People v. Garner, supra,* 806 P.2d at 373–74.

When a contemporaneous limiting instruction articulates the explicit purpose of the evidence, the closing charge need only remind the jury that certain evidence was admitted during trial for a limited purpose. *See Hollis v. People,* 630 P.2d 68, 70 (Colo.1981); *People v. McKibben,* 862 P.2d 991, 994 (Colo. App.1993).

■ Here, the trial court omitted the explicit purpose for which the evidence was admitted in the initial limiting instruction given at the end of the housemate's direct testimony. However, it rectified any potential prejudice to defendant by informing the jury following defendant's cross-examination of the housemate that it had forgotten to mention that the housemate's testimony was admitted for the limited purpose of showing that defendant acted knowingly. *See People v. Marion,* 941 P.2d 287, 293–94 (Colo.App.1996)(limiting instruction given on rebuttal, but not earlier on cross-examination).

The court's written instruction reminded the jury, in language tracking that of CJI–Crim. 4:02 (1983), that certain evidence had been admitted for a limited purpose. *See People v. Leonard,* 872 P.2d 1325, 1329 (Colo. App.1993); *People v. McKibben, supra,* 862 P.2d at 994. Given that only six witnesses testified at trial, and that the housemate's testimony was the only evidence admitted for a limited purpose, we conclude that the jury would have had no difficulty recalling either the evidence or the limited purpose for which it was admitted.

Consequently, we perceive no plain error resulting from the trial court's limiting instructions.

### II. Instructional Definition of Possession

Defendant also contends that the trial court erred in refusing to instruct the jury on the definition of possession as set forth by the supreme court in *People v. Villapando,* 984 P.2d 51, 54 (Colo.1999). We disagree.

In *Villapando,* the supreme court recited the definition of "possess" given in *Black's Law Dictionary* 1162–63 (6th ed. 1990): "[A]ctual control, care and management of the drug. [A][d]efendant 'possesses' [a] con-

trolled substance when [the] defendant knows of [the] substance's presence, [the] substance is immediately accessible, and [the] defendant exercises 'dominion or control' over [the] substance."

Here, the trial court instructed the jury that:

"Possession," as used in these instructions, does not necessarily mean ownership, but does mean actual, physical possession, or the immediate and knowing dominion or control over the object or the thing allegedly possessed. Possession need not be exclusive, provided that each possessor, should there be more than one, actually knew of the presence of the object, or thing possessed, and exercised actual physical control or immediate, knowing dominion or control over it.

The trial court's instruction mirrors that which has been given in numerous Colorado cases. *See People v. Pineda–Eriza,* —— P.3d ——, 2001 WL 199419 (Colo.App. No. 98CA0721, Mar. 1, 2001); *People v. Richardson,* 8 P.3d 562, 565 (Colo.App.2000), *aff'd,* 25 P.3d 54 (Colo.2001); *People v. Mascarenas,* 972 P.2d 717, 723 (Colo.App.1998). And, after comparing the definition of "possess" used in *Villapando* with the definition of "possession" given here, we discern no appreciable difference between the two. Contrary to defendant's assertion, both definitions encompass the elements of immediate access to, and control and dominion over, an object.

Consequently, we discern no error in the court's instruction. *See People v. Jones,* 990 P.2d 1098, 1107 (Colo.App.1999)(a trial court has substantial discretion to formulate instructions so long as they are correct statements of law).

### III. Equal Protection

Lastly, defendant argues that she is denied equal protection of the laws because § 18–18–405(1)(a), C.R.S.2001, the statute under which she was prosecuted here, punishes possession of a schedule II controlled substance more severely than § 18–18–404, C.R.S.2001, punishes use of that same substance. Again, we disagree.

In *People v. Cagle,* 751 P.2d 614, 620 (Colo. 1988), the supreme court rejected the very argument raised by defendant, reasoning that possession could be punished more severely than use because one who has possession of a controlled substance, but does not use it, has the capability of distributing or dispensing it to others.

Defendant's reliance on *People v. Villapando, supra,* for a contrary conclusion, is misplaced. In *Villapando,* the defendant was prosecuted on both possession and use charges based solely on the fact that, while incarcerated, he tested positive for an active ingredient of marijuana. Because the defendant could not have "used" marijuana without first possessing it, the supreme court held that a person who used the drugs could not be punished more severely for possessing than using those drugs.

Unlike *Villapando,* but like *Cagle,* the present case concerns a defendant who possessed, but had not used the drugs. Like *Cagle,* defendant here was capable of distributing the methamphetamine to another, as she had previously done to her housemate. Thus *Cagle,* not *Villapando,* controls the outcome in this case.

Accordingly, the judgment is affirmed.

Judge NEY concurs.

Judge ROY concurs in part and dissents in part.

Judge ROY concurring in part and dissenting in part.

While I concur with the balance of the opinion, I respectfully dissent from the majority's holding that the roommate's testimony that defendant had previously given him illegal drugs was admissible to prove that defendant later knowingly possessed the drugs in question here.

The fact that a defendant has knowingly possessed illegal drugs in the past may be intuitively relevant to whether he or she knowingly possessed the illegal drugs charged, but such a fact has no logical relevance independent of the prohibited inference that the defendant has and was acting

in conformity with a bad character. *See People v. Spoto*, 795 P.2d 1314 (Colo.1990). Put another way, that a person had knowledge in one instance is of very marginal relevance in determining whether the person has knowledge in a subsequent instance. *People v. Duncan*, 33 P.3d 1180, 1184 (Colo. App.2001)(Roy, J., concurring in part and dissenting in part). Further, even if there were some modicum of logical relevance independent of the prohibited inference, its probative value would be vastly outweighed by the danger of unfair prejudice to the defendant.

Because whether defendant acted "knowingly" was the primary issue at trial, I cannot conclude the error here in admitting the roommate's testimony was harmless. Therefore, I would reverse and remand for a new trial.