Opinion by JUDGE CASEBOLT
¶ 1 In this proceeding involving DNA preservation and testing, defendant, Robert J. Young, appeals the postconviction court's order denying his motion for relief under sections 18-1-414(2)(b) and 18-1-1104, C.R.S.2014. Those statutory provisions authorize a court to impose a remedy (1) for law enforcement officials' negligence in destroying, losing, or otherwise disposing of biological evidence that the court has ordered preserved; and (2) if a violation of a defendant's due process rights has occurred in that destruction. The postconviction court declined to provide defendant with a remedy for the destruction of evidence and determined that no due process violation had occurred. We affirm the court's determination.
I. Procedural History and Background
¶ 2 This appeal stems from defendant's 1988 conviction for kidnapping and sexual assault.
¶ 3 A telephone caller notified police that a woman was being beaten and dragged down the street by a large black male. An officer in the vicinity quickly responded to the location and heard a woman yelling for help. He followed the screams and observed defendant, a black male, lying on top of the victim. Defendant's pants and underwear were down around his ankles and the victim was naked from the waist down. The victim was screaming for help while defendant was lying on top of her.
¶ 4 The police officer ordered defendant to stand up and raise his hands. Defendant stood up, pulled up his underwear and pants, and then raised his hands. He stated, "I didn't rape her." The victim continued to scream and plead for help after defendant stood up.
¶ 5 The officer arrested defendant and the prosecution charged him with kidnapping and sexual assault. Before trial, the victim identified defendant as her assailant. The telephone caller who had observed the victim being dragged down the street could not *678 positively identify defendant because he had observed the perpetrator from behind.
¶ 6 The victim's underwear was recovered as evidence, and semen was found on the crotch area of the fabric inside the underwear. The Denver Crime Laboratory (DCL) conducted serology testing that, in 1988, could produce results that would include or exclude large groups of individuals as donors. The test results showed that a group of people, including defendant, could have been the semen donor.
¶ 7 Before trial, defendant requested the trial court to order and provide payment for DNA testing of the semen stains on the underwear, arguing that the identity of the attacker was a significant issue in the case. The trial court denied the motion, concluding that the evidence was sufficiently strong on the issue of identification such that additional DNA testing was not warranted.
¶ 8 At trial, the fact that the victim was sexually assaulted was not in dispute. Both the responding officer and the victim made in-court identifications of defendant as the attacker. The victim testified that the person who beat her and dragged her down the street was the same person who had sexually assaulted her, and that defendant was the only person involved in the attack. Defendant asserted that the police officer and victim were mistaken in their identifications because he was at the scene only to aid the victim after the attack. He asserted that the real attacker had run away before he arrived. The jury convicted defendant on both counts.
¶ 9 On direct appeal, a division of this court affirmed, concluding, among other things, that the trial court had not abused its discretion in denying defendant's request for DNA testing because "defendant was seen committing the offense by a police officer and was identified by the victim," making "the utility of DNA testing ... speculative at best." People v. Young, slip op. at 9 (Colo.App. No. 90CA0034, Feb. 28, 1991) (not published pursuant to C.A.R. 35(f) ).
¶ 10 Defendant filed two unsuccessful postconviction motions. Both denials were affirmed on appeal. People v. Young, (Colo.App. No. 98CA2026, Dec. 30, 1999) (not published pursuant to C.A.R. 35(f) ); People v. Young, (Colo.App. No. 01CA0359, 2002 WL 1764520, Jan. 24, 2002) (not published pursuant to C.A.R. 35(f) ).
¶ 11 In January 2006, defendant filed a pro se Crim. P. 35(c) motion seeking postconviction relief under sections 18-1-411 to - 417, C.R.S.2014. The statutory provisions, adopted by the General Assembly in 2003, generally provide for postconviction testing of DNA if certain conditions are met.
¶ 12 First, an incarcerated person "may apply to the district court ... where the conviction was secured for DNA testing concerning the conviction and sentence the person is currently serving." § 18-1-412(1), C.R.S.2014. Second, the motion "shall include specific facts sufficient to support a prima facie showing that post-conviction relief is warranted under the criteria set forth in section 18-1-413." § 18-1-412(2). Third, under section 18-1-413(1), a court shall not order DNA testing unless the petitioner demonstrates by a preponderance of the evidence that
(a) Favorable results of the DNA testing will demonstrate the petitioner's actual innocence;
(b) A law enforcement agency collected biological evidence pertaining to the offense and retains actual or constructive possession of the evidence that allows for reliable DNA testing;
(c)(I) Conclusive DNA results were not available prior to the petitioner's conviction; and
(II) The Petitioner did not secure DNA testing prior to his or her conviction because DNA testing was not reasonably available or for reasons that constitute justifiable excuse, ineffective assistance of counsel or excusable neglect; and
(d) The petitioner consents to provide a biological sample for DNA testing.
"Actual innocence" is defined as "clear and convincing evidence such that no reasonable juror would have convicted the defendant." § 18-1-411(1), C.R.S.2014. A defendant may use the results of the DNA testing to file a postconviction motion although it may be untimely. § 18-1-416(1), C.R.S.2014.
*679 ¶ 13 Defendant asserted in his motion that DNA testing had never before been conducted on the underwear and claimed that such testing would confirm his actual innocence. He contended, as he had at trial, that while he was found with the victim, he was only "bent over the woman" when the police arrived; that he did not kidnap or sexually assault her; and that he arrived after she had already been assaulted.
¶ 14 In March 2006, the postconviction court (first postconviction court) signed a preprinted form appointing counsel to assist defendant with his request. That court did not set forth any specific findings other than to note that counsel was appointed for a "post-conviction request for DNA test pursuant to C.R.S. 18-1-412."
¶ 15 The first postconviction court held a hearing in April 2006. The court directed the parties to investigate whether the underwear had been preserved. The court stated that it had reviewed the closing arguments from the 1988 trial and had concluded that "the issue of I.D. was a significant issue in the case ... such that DNA results could be significant." The court instructed the parties that their "job at this point is to do some-do some looking" into the existence of evidence preserved for testing. The court stated that it had appointed counsel because it thought there might be evidence available to be tested and a "DNA test was probably called for." The court made no other findings.
¶ 16 At a subsequent hearing in June 2006, the first postconviction court determined that the victim's underwear had been preserved, but noted that its location was unknown. Defense counsel indicated that the parties had not reached an agreement regarding DNA testing and acknowledged that defendant would need another hearing to present evidence to prove the elements set forth in section 18-1-413. The prosecution asserted that testing should not be conducted because defendant could not demonstrate actual innocence. The court set the matter for another hearing where it would address whether the testing should be ordered. While the prosecution stated that a "hold" had already been placed on the evidence, the court made no explicit order at that time regarding preservation.
¶ 17 By September 2006, defense counsel had located the underwear in the property and evidence room in the Denver City and County building. At that time, counsel moved the court to preserve and protect the evidence by not allowing anyone to open the paper bag in which the underwear was stored. The court granted the motion, stating that "the evidence shall remain inside its present container until such time as it is to be tested. Defendant is responsible for notifying the proper parties not to disturb the container and the evidence held therein."
¶ 18 Because the underwear was stored in the City and County building and not in an evidence or property room maintained by a law enforcement agency, defense counsel also moved to release the evidence under the Colorado Criminal Justice Records Act (CJRA), sections 24-72-301 to - 309, C.R.S.2014. Defendant argued that the evidence was not under the actual or constructive control of a law enforcement agency (as is required under section 18-1-413(1)(b)), and that the underwear should therefore be released to defendant for testing under the CJRA.
¶ 19 At a hearing in October 2006 before a different judge (second postconviction court), the prosecution argued that defendant had not met the actual innocence requirement of section 18-1-413, and asserted that the underwear did not qualify as a "criminal justice record" under section 24-72-302(4) of the CJRA. Defendant responded that the underwear was a criminal justice record because it related to "the results of chemical biological substance testing to determine genetic markers" within the definition of that section. Alternatively, he asserted that he had satisfied the elements set forth in section 18-1-413, including the showing of actual innocence.
¶ 20 In November 2006, the second postconviction court issued a written order concluding that section 18-1-413 did not apply because a law enforcement agency had not retained actual or constructive possession of the evidence. But the court further found that the underwear constituted a criminal *680 justice record under the CJRA and it ordered release of the underwear to defendant for testing.
¶ 21 The prosecution moved the court to reconsider its ruling and requested a stay of the order releasing the evidence to defendant. It again contended that the underwear did not meet the plain language of the "criminal justice record" definition under the CJRA, and also stated that "[i]f the court were to determine that Defendant has met the burden set forth in section 18-1-413 ... for an order for DNA testing, then the prosecution would be willing to have DNA testing performed on the [underwear] by the [DCL]." In reply, defendant agreed that the DCL was suitable to conduct any testing, as long as it was non-destructive.
¶ 22 In March 2007, the second postconviction court withdrew "the portion of the November ... order that release of the evidence at issue hinges on the provision of the [CJRA]" but reaffirmed its decision to release the evidence for testing. It ordered the underwear to be tested by the DCL. The court stated that the prosecution had "agreed" to testing by the DCL, but did not state its basis for ordering the testing under section 18-1-413, nor did it withdraw its previous conclusion that section 18-1-413 did not apply.
¶ 23 In July and August 2007, an analyst from the DCL performed tests on the underwear. The analyst examined the crotch of the underwear using testing to detect traces of semen and saliva. The DCL report indicated that four cuttings were taken from the crotch area of the underwear and indicated that no semen was detected. The report also noted that DNA testing was conducted on two of the cuttings and that no DNA results were recovered from one cutting and the results on the second cutting were inconclusive. The analyst also examined the underwear with an alternative light source to determine if semen or saliva stains were present elsewhere on the underwear and she concluded that there were no other stains that would yield a DNA profile.
¶ 24 The report was provided to defendant in September 2007. Over fourteen months later, in December 2008, defendant moved the court to allow him to independently test the underwear. Defendant asserted that he was entitled to have his own expert examine the underwear "to confirm that there is, or is not, an area of the underwear that would yield test results."
¶ 25 In January 2009, another postconviction court (third postconviction court) granted defendant's request for independent testing and ordered that no destructive testing could be done without prior court approval. The court did not reference section 18-1-412 or the requirements of section 18-1-413.
¶ 26 Fifteen months later, in April 2010, defendant attempted to locate the underwear at the Denver Property Bureau. The underwear could not be located. Defendant discovered that the underwear had likely been destroyed in October 2009.
¶ 27 In September 2010, defendant filed the motion at issue here, seeking relief because of the destruction of the evidence. He asserted that its destruction violated the courts' previous orders, as well as the provisions set forth in section 18-1-1103, C.R.S.2014, a statutory provision enacted in 2009 that requires a law enforcement agency to preserve DNA evidence collected in a criminal investigation for the life of a convicted defendant. § 18-1-1103(1). He also requested relief under section 18-1-414(2)(b), which allows a court to grant a remedy when "a law enforcement agency, through negligence, destroys, loses or otherwise disposes of biological evidence that is the subject of an order [to preserve the evidence]."
¶ 28 Defendant filed an affidavit from his DNA expert as an attachment to the motion. The affidavit asserted that the 2007 testing done by the DCL only considered saliva or semen evidence and DNA evidence in the crotch area of the underwear. The expert opined that the underwear could have contained "touch DNA" evidence along the waistband or leg of the underwear that could have been transferred by the assailant in removing the victim's clothing during the assault.
¶ 29 In December 2010, another postconviction court (fourth postconviction court) held a hearing regarding the destruction of *681 the evidence. A supervisor from the Denver Property Bureau testified that the Bureau could not locate the underwear when defendant requested it in April 2010, and that it had most likely been destroyed in October 2009 because of the age of the case. He stated that he was not aware of any preservation orders in the case.
¶ 30 The lab analyst who conducted the tests in 2007 testified in detail regarding testing results, her methods of testing, and her conclusion that the underwear contained no usable DNA evidence. She did, however, acknowledge that someone handling the underwear could have left skin cells on the garment that might contain DNA.
¶ 31 Defendant's expert testified that skin cells could yield DNA, and this evidence could have been recovered from areas not tested by the DCL, such as the waistband and leg area of the underwear. However, he acknowledged that there might be no material on the underwear that contained a usable DNA profile, and that even if "touch DNA" were recovered from the leg or waistband areas, he would not be able to state that the DNA came from the assailant as opposed to another person who had handled the underwear in the twenty-plus years since the crime's commission.
¶ 32 Following the hearing, the fourth postconviction court ordered the parties to submit briefs regarding the timeliness of defendant's motion and to also address whether any court had previously made the required findings under section 18-1-413.
¶ 33 In March 2011, the fourth postconviction court issued a detailed order. It recited the information noted above and concluded that the police department had inadvertently destroyed the evidence, and there was no evidence that any police personnel specifically directed or authorized the destruction. It concluded that previous courts had appointed counsel and held hearings without making the requisite findings under sections 18-1-412 and 18-1-413, and noted that the prosecution had objected to DNA testing and had consistently argued that defendant had failed to establish the necessary statutory criteria. It also concluded that defendant's motion seeking testing had never been addressed or resolved under the statutory criteria.
¶ 34 The court then concluded that defendant was not entitled to DNA testing under section 18-1-413, in part because he had failed to establish, by a preponderance of the evidence, that favorable results of DNA testing would demonstrate his actual innocence. Concerning defendant's claim that sections 18-1-1102 and 18-1-1103 had been violated, the court assumed that the underwear constituted DNA evidence and that it had been destroyed. Even so, it determined that defendant's due process rights had not been violated because the evidence did not possess any exculpatory value that was apparent before it was lost or destroyed.
¶ 35 Finally, the court held that defendant was not entitled to relief based on the police department's alleged violation of court orders to preserve the evidence.
¶ 36 Defendant appeals the order.
II. Sanctions under Section 18-1-414(2)
¶ 37 The first aspect of the motion before us is defendant's request for a remedy, under section 18-1-414(2), for the negligent destruction of the underwear. Defendant asserts the fourth postconviction court erred in determining that he was not entitled to relief under section 18-1-414(2)(b). He contends, first, that the court erred in acting as an appellate court and reviewing the three earlier postconviction courts' rulings ordering testing, and, second, in concluding that he could not show that testing would demonstrate his actual innocence. We disagree with both contentions.
A. Standard of Review
¶ 38 An incarcerated person's postconviction motion for relief for destruction of DNA evidence presents a mixed question of law and fact. When reviewing a court's ruling on such a motion, we review the court's factual findings for clear error and its legal conclusions de novo. See People v. Abdu, 215 P.3d 1265, 1270 (Colo.App.2009) ; § 18-1-414(2)(b).
*682 B. Applicable Law
¶ 39 Under the law of the case doctrine, prior relevant rulings made in the same case are generally to be followed. People v. Warren, 55 P.3d 809, 813 (Colo.App.2002). However, "[a] trial court may, in its discretion, reconsider and reverse a prior ruling if it determines that 'its former ruling is no longer sound because of changed conditions, it needs to correct its previous ruling because of a legal or factual error, an intervening change in the law has occurred, or manifest injustice would result from its original ruling.' " Id. (quoting Janssen v. Denver Career Serv. Bd., 998 P.2d 9, 15 (Colo.App.1999) ).
¶ 40 The court that makes a decision has the power to reconsider that decision as long as the case remains within its jurisdiction. People v. Roybal, 672 P.2d 1003, 1005 n.5 (Colo.1983) (citing 1B J. Moore, Federal Practice ¶ 0.404[1], at 118 (2d ed. 1983)).
¶ 41 The law of the case doctrine is more flexible in its application to reconsideration by the court making the decision because, in that situation, the only purpose of the doctrine is efficiency of disposition. Id.
¶ 42 Under section 18-1-413, the postconviction court determines factual issues before ordering DNA testing. The court must determine whether a test favorable to defendant would have made a difference to the jury at trial by demonstrating a defendant's actual innocence; that the DNA evidence exists and is under the control of a law enforcement agency; and that conclusive DNA results were not otherwise available to the defendant before trial. § 18-1-413.
¶ 43 Once the court grants a motion for a hearing to determine if postconviction testing is warranted, the court must order the agency to preserve the evidence. § 18-1-414(2)(a).
¶ 44 A defendant is not entitled to relief based solely on an allegation that a law enforcement agency has failed to preserve DNA evidence. § 18-1-414(1).
¶ 45 If a law enforcement agency, through negligence, destroys, loses, or otherwise disposes of biological evidence that is subject to a preservation order before the evidence may be tested, the court must set a hearing to determine whether a remedy is warranted. § 18-1-414(2)(b). If the court concludes that some remedy is warranted, it has complete discretion in determining the remedy and can order whatever relief may be "just, equitable, and appropriate." Id.
C. Application
1. Court's Authority to Review Prior Rulings
¶ 46 At the outset, we note that the evidence here was subjected to testing by the DCL before its destruction. Section 18-1-414(2)(b) permits a court to provide a remedy for the destruction of evidence only if the evidence was destroyed before it could be tested. Thus, it is questionable whether section 18-1-414(2)(b) applies because testing by the DCL, the agreed-upon forensic lab, had already occurred. But that issue is not raised or addressed by the parties, and we do not need to reach it because we will assume, without deciding, that section 18-1-414(2)(b) applies to a situation in which evidence has been destroyed after some testing has been completed, but before a defendant conducts additional testing that has been authorized by a court.
¶ 47 Here, in ruling on defendant's motion, the fourth postconviction court determined that none of the three previous courts had made the necessary findings under the statutory provisions that would have justified a postconviction testing order. It further determined that, because defendant was not entitled to testing of the underwear under section 18-1-413 in the first instance, he was not entitled to relief under section 18-1-414(2)(b) because of the negligent destruction of the underwear. For several reasons, we perceive no error in those conclusions.
¶ 48 First, because the fourth postconviction court retained jurisdiction over the postconviction motion for DNA testing and the order at issue here necessarily flowed from that motion, the court had the power and authority to reconsider the earlier decisions. Roybal, 672 P.2d at 1005 n.5.
*683 ¶ 49 Second, the court had the authority to examine the prior rulings because it determined that previous courts had never addressed the statutory prerequisites. See Warren, 55 P.3d at 813. The court's determination was based on the first postconviction court's appointment of counsel and holding of a hearing without making any findings under sections 18-1-412 and 18-1-413, even though the prosecution specifically had asserted that defendant had failed to establish the statutory criteria necessary to trigger the application of the statute. The fourth postconviction court's determination was also based on the fact that the second postconviction court's order requiring DNA testing was initially premised upon the CJRA, not section 18-1-412 and 18-1-413. The court also noted the second court's ultimate withdrawal of its reliance on the CJRA, and its reaffirmance of the decision to release the evidence for testing occurred without making any findings under the DNA testing provisions. Both of these determinations are well supported by the record; hence, defendant's contention that they are clearly erroneous fails.
¶ 50 Defendant nevertheless contends the court erred in determining that the previous three courts had failed to find the statutory prerequisites. He asserts that the previous three courts had implicitly found that his petition sufficiently satisfied section 18-1-413. He argues that when the first postconviction court appointed counsel for him under section 18-1-412, it implicitly found that the requirements of section 18-1-413 had been met. But this assertion ignores that the first postconviction court's order appointing counsel was set forth in a preprinted form and indicated only that the appointment of counsel was for a "post-conviction request for DNA test pursuant to C.R.S. 18-1-412." This language does not imply that testing was warranted.
¶ 51 Further, the statute provides that "[c]ounsel for the defendant may request the court to set the matter for a hearing, if, upon investigation of the petitioner's motion for testing, counsel believes sufficient grounds exist to support an order for DNA testing." § 18-1-412(5). The purpose of the hearing is obviously to determine whether the defendant has made a sufficient showing of the statutory prerequisites enumerated in section 18-1-413. Hence, the mere granting of a hearing does not, by itself, implicitly demonstrate that the statutory grounds had been met.
¶ 52 Here, the first postconviction court stated that it had appointed counsel because of defendant's request and because it believed evidence might exist that could be tested for DNA, in light of the fact that identity had been an issue at defendant's trial. Therefore, the appointment of counsel, by itself, was not an implicit determination by the court that defendant's application met the prerequisites in section 18-1-413.
¶ 53 Concerning defendant's contention that the second and third postconviction courts had also implicitly found the factors set forth in section 18-1-413 were satisfied, defendant relies upon appellate cases holding that implicit determinations may be gleaned from a trial court record. We conclude that his reliance is misplaced.
¶ 54 In each of the cases defendant cites, the trial court had made at least some findings of fact relating to the appropriate legal test, but had not been explicit in its findings regarding all the required factors. For example, in Warren, 55 P.3d at 814, a case dealing with CRE 404(b) evidence, a division of this court concluded that the trial court implicitly had determined that the prior act had occurred, that the evidence was proffered for a proper purpose, and that it had relevance independent of any inference of bad character. That determination, however, was based on the trial court's explicit acknowledgment of the applicability of the proper legal test, its determination that the evidence was relevant to prove the defendant's knowledge, and its conclusion that the evidence was not unduly prejudicial.
¶ 55 Similarly, in People v. McGraw, 30 P.3d 835, 838 (Colo.App.2001), a division of this court concluded that a finding that the defendant had committed the other act under CRE 404(b) was implicit when the trial court made findings of fact as to all four factors set forth in People v. Spoto, 795 P.2d 1314 (Colo.1990).
*684 ¶ 56 In People v. Meyer, 952 P.2d 774, 777 (Colo.App.1997), a division of this court concluded that a finding that out-of-court statements were supported by circumstantial guarantees of trustworthiness was implicit in the court's admission of the statements under the residual exception to the hearsay rule because the court made findings as to other factors relevant to the legal test.
¶ 57 Here, in contrast, the second postconviction court made no implicit findings under section 18-1-413 because that court's order initially found that this statutory provision did not even apply and, after withdrawing its finding that the CJRA applied, it further misinterpreted the prosecution's motion for reconsideration as an agreement to conduct DNA testing, and thus did not even address the elements of section 18-1-413. The court, in fact, reaffirmed the rest of its prior order without reversing its finding that the evidence was not under the control of law enforcement officials, which precluded a testing order under section 18-1-413.
¶ 58 The third postconviction court's order simply granted defendant's request for independent testing without citing any authority. As pertinent here, it stated, "[t]he Court has reviewed Defendant's 'Motion for Permission to do Independent Inspection and Testing on the Evidence Herein', and being fully advised, GRANTS said motion." Further, defendant's motion had cited sections 18-1-1101 to - 1108, C.R.S.2014, a 2009 statutory enactment requiring preservation of DNA evidence. Nowhere in his motion had defendant referred to sections 18-1-412 or 18-1-413.
¶ 59 Hence, the fourth postconviction court did not err in revisiting the orders for testing entered by the three previous postconviction courts.
2. Prerequisites under Section 18-1-413
¶ 60 After finding that no prior court had made the appropriate statutory findings, the fourth postconviction court analyzed defendant's petition and the record underlying his conviction and direct appeal. It concluded that "defendant [has] wholly failed to establish by a preponderance of the evidence that favorable results of DNA testing would demonstrate his actual innocence." We perceive no error in that determination.
¶ 61 The court noted that defendant's motion omitted and ignored the noteworthy facts that were relied upon by the trial court in denying defendant's pretrial motion for DNA testing. Defendant's pro se motion averred that he was "bending over" the victim when the police arrived, but the evidence at pretrial hearings and at trial showed that defendant was found with his pants and underwear down around his ankles while he was lying on top of the screaming victim, who was also naked from the waist down.
¶ 62 The court also found that the affidavit authored by defendant's DNA expert merely established that the underwear could be subjected to further testing and did not establish that favorable "touch DNA" testing from areas of the underwear other than the crotch would demonstrate by "clear and convincing evidence ... that no reasonable juror would have convicted ... defendant." See § 18-1-411(1) (defining "actual innocence").
¶ 63 The findings noted above are clearly supported by the record. Based on these findings, we agree with the court that defendant failed to show that DNA testing would establish his actual innocence. Hence, because defendant was not entitled to testing in the first instance, the court did not err in denying defendant relief under section 18-1-414 for the negligent destruction of the underwear before defendant could perform additional independent testing.
III. Section 18-1-1104 and Due Process
¶ 64 Defendant next contends that the fourth postconviction court erred in finding that he was not entitled to relief for the destruction of the underwear under section 18-1-1104(4), enacted in 2009, which details procedures for the preservation of DNA evidence. We disagree.
A. Standard of Review
¶ 65 We review the trial court's factual findings for clear error and its legal conclusions de novo. Abdu, 215 P.3d at 1270.
*685 B. Applicable Law
¶ 66 A law enforcement agency that collects DNA evidence during a criminal investigation for a sexual offense that results in a conviction must preserve the DNA evidence for the life of the convicted defendant. §§ 18-1-1102(1)(b), 18-1-1103(2), C.R.S.2014. If, upon request, a law enforcement agency cannot produce DNA evidence that is subject to preservation under section 18-1-1103, "the court shall determine whether the disposal of the DNA evidence violated the defendant's due process rights, and, if so, the court shall order an appropriate remedy." § 18-1-1104(4).
¶ 67 Part 11 of Article 1 of Title 18 does not specifically set forth a test that the court should use in determining whether there has been a due process violation. Accordingly, we will employ the well-established test created by federal and state courts to make that determination.
¶ 68 To establish a due process violation based upon destruction of evidence, a defendant must show that (1) the evidence was suppressed or destroyed by the state; (2) the evidence possessed an exculpatory value that was apparent before it was destroyed; and (3) the defendant is unable to obtain comparable evidence by other reasonably available means. People v. Braunthal, 31 P.3d 167, 172 (Colo.2001) (citing People v. Greathouse, 742 P.2d 334, 338-39 (Colo.1987) ). All three parts of the test must be established to prove a due process violation. Id.
¶ 69 Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process. Abdu, 215 P.3d at 1270 (citing Arizona v. Youngblood, 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988) ). "Negligent destruction" of evidence cannot constitute a due process violation. Id. And a claim that the evidence was only "potentially useful" cannot prove that the evidence had "apparent exculpatory value" when it was destroyed. Id.
C. Application
¶ 70 Here, the court found that, while the underwear was subject to further testing for "touch DNA," it was clear that when the underwear was destroyed in October 2009, it possessed no apparent exculpatory value, given the 2007 testing that had already been conducted. The court then concluded that defendant's due process rights had not been violated and he was therefore not entitled to a remedy. We agree with that determination.
¶ 71 At the hearing on defendant's motion for relief, the court heard testimony from both the analyst who conducted the 2007 tests and defendant's DNA expert. The analyst testified that there was no semen or saliva on the underwear that contained a usable DNA profile. She acknowledged that a person who had handled the underwear could have left skin cells containing DNA, and that she tested for such DNA only in the crotch area of the underwear.
¶ 72 Defendant's expert testified that, given the violent nature of the crime, such "touch DNA" could possibly be found on the waistband or leg of the underwear. However, he also conceded that there would be no way of knowing if any unidentified "touch DNA" would have come from the attacker.
¶ 73 As the court found, DNA evidence that someone other than the victim and defendant touched the underwear that had been "examined by investigators and forensic examiners, inspected, marked and introduced as exhibits by attorneys, and potentially examined by witnesses and jurors, is less probative of the identity of the assailant." At the time the evidence was destroyed, it had already undergone thorough testing procedures with negative or inconclusive results. We agree with the court's finding that there was no apparent exculpatory value to the underwear, given the 2007 testing and the limited probative value of "touch DNA" in these circumstances.
¶ 74 Moreover, "[t]he due process clause of the [F]ourteenth [A]mendment does not invariably require a state to preserve evidence which might be favorable to the accused when dealing with evidentiary material *686 'of which no more can be said than it could have been subjected to tests .' " People v. Wyman, 788 P.2d 1278, 1279 (Colo.1990) (quoting Youngblood, 488 U.S. at 57, 109 S.Ct. 333 ) (emphasis added). Thus, "[w]hen dealing with such evidence, unless an accused can show bad faith on the part of the police, failure to preserve useful evidence does not constitute a due process deviation." Id.
¶ 75 Here, defendant's expert could only assert that the underwear was subject to further "touch DNA" testing that might or might not have yielded usable DNA results. And defendant does not contend on appeal that the police acted in bad faith. Indeed, the fourth postconviction court found that they had not, and the record supports that determination.
¶ 76 Hence, we affirm the court's determination that the destruction of the evidence here did not violate defendant's due process rights. See Abdu, 215 P.3d at 1270.
IV. Conclusion
¶ 77 The order is affirmed.
JUDGE ROMÁN and JUDGE GABRIEL concur.