22CA1947 Peo v Alvarenga 07-18-2024 COLORADO COURT OF APPEALS Court of Appeals No. 22CA1947 Jefferson County District Court No. 21CR3021 Honorable Jason Carrithers, Judge The People of the State of Colorado, Plaintiff-Appellee, v. Jesus Alvarenga, Defendant-Appellant. JUDGMENT AFFIRMED Division IV Opinion by JUDGE PAWAR Navarro and Richman*, JJ., concur NOT PUBLISHED PURSUANT TO C.A.R. 35(e) Announced July 18, 2024 Philip J. Weiser, Attorney General, Emmy A. Langley, Senior Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee Megan A. Ring, Colorado State Public Defender, Katherine Brien, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant *Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2023. 
1 ¶ 1 Defendant, Jesus Alvarenga, appeals the judgment of conviction entered after a jury found him guilty of menacing, attempted second degree kidnapping, and a crime of violence sentence enhancer. We affirm. I. Background ¶ 2 The prosecution charged Alvarenga with attempted second degree kidnapping, a crime of violence sentence enhancer, and menacing with a deadly weapon, based on fourteen-year-old B.O.’s allegations that he attempted to force her into his car while she was waiting for the bus. ¶ 3 B.O. testified at trial that Alvarenga sat next to her, offered her marijuana, held a knife against her leg, repeatedly asked if she needed a ride in a “very soft but demanding tone,” and assured her if she got in the car with him everything would be okay. The prosecution also introduced evidence that Alvarenga previously had a sexual relationship with a sixteen-year-old after picking her up in Pueblo and had approached a young woman in Edgewater. The defense did not dispute that Alvarenga contacted B.O. at the bus stop. It argued that Alvarenga may have made B.O. uncomfortable, 
2 but it was a misunderstanding, and he did not attempt to kidnap her. The jury convicted Alvarenga as charged. ¶ 4 Alvarenga now appeals. He claims that (1) the prosecution presented insufficient evidence to support his attempted kidnapping conviction; (2) the trial court erroneously admitted other act evidence; and (3) the trial court violated his right to confrontation by improperly admitting hearsay evidence. II. Sufficient Evidence Supports Attempted Kidnapping Conviction A. Standard of Review and Relevant Law ¶ 5 In reviewing the sufficiency of the evidence, we consider whether the relevant evidence, both direct and circumstantial, when viewed as a whole and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable mind that the defendant is guilty of the charge beyond a reasonable doubt. People v. Donald, 2020 CO 24, ¶ 18. ¶ 6 We must “give the prosecution the benefit of all reasonable inferences that might fairly be drawn from the evidence.” Id. at ¶ 19. The fact “that reasonable alternative inferences were 
3 possible” does not render the evidence insufficient to support a conviction. Id. at ¶ 41. ¶ 7 Second degree kidnapping occurs when “[a] person . . . knowingly seizes and carries a person from one place to another, without [their] consent and without lawful justification.” § 18-3-
302(1), C.R.S. 2023. Seize and carry are two distinct elements. Garcia v. People, 2022 CO 6, ¶ 22. A defendant is guilty of the seizure element if “the defendant knowingly took possession of or had control over the victim.” Id. at ¶ 23. The carry element requires movement from one place to another. Id. at ¶ 28. Attempted second degree kidnapping occurs when an individual knowingly engages in behavior that constitutes a substantial step toward committing and completing the crime. See § 18-2-101(1), C.R.S. 2023 (“A substantial step is any conduct, whether act, omission, or possession, which is strongly corroborative of the firmness of the actor’s purpose to complete the commission of the offense.”). 
4 B. Discussion ¶ 8 Alvarenga argues the evidence was insufficient to support a reasonable conclusion that he attempted to seize and carry B.O., as required for an attempted kidnapping conviction. We disagree. ¶ 9 B.O. testified that Alvarenga and another man (Thomas Noles) drove to the bus stop where both men approached her and that Alvarenga sat next to her and held a blade against her thigh. She testified that Alvarenga offered her marijuana and sat “very close” and “felt like he was getting closer” as he repeatedly asked her questions, “[C]an I use your phone, do you need a ride, do you want to get a ride, like in his very soft but demanding tone.” She testified that Alvarenga told her everything would be okay if she went with him and that she was scared and didn’t know what was going to happen. ¶ 10 The officers who responded to the scene testified that they found a serrated blade on the bench where B.O. had been sitting and that when they found B.O., she was “visibly upset and crying”; “hunkered down”; “shaking”; and “looking around, clearly nervous and very shaken up.” 
5 ¶ 11 “Conduct strongly corroborative of the firmness of the actor’s criminal purpose is sufficient in itself” to constitute a substantial step. People v. Lehnert, 163 P.3d 1111, 1115 (Colo. 2007). The evidence that Alvarenga held a blade against B.O.’s body, offered her marijuana, and used a demanding tone demonstrates his intent to gain control over B.O. That B.O. was afraid and shaken up when police arrived further supports the jury’s conclusion that Alvarenga attempted to seize B.O. See Garcia, ¶23. ¶ 12 Likewise, Alvarenga’s repeated pressure on B.O. to go with him in the car demonstrates his desire to move B.O. from the bus stop to another location. See id. at ¶¶ 28-29 (evidence of a victim’s movement, even if minimal, will often fulfill the “one place to another” requirement); see also People v. Abbott, 690 P.2d 1263, 1270, n.4 (Colo. 1984) (knowing asportation occurs when a victim’s movement is made or suggested out of fear). Viewing this evidence as a whole and in the light most favorable to the prosecution, we conclude it was substantial and sufficient to support Alvarenga’s attempted kidnapping conviction. 
6 III. Other Acts Evidence ¶ 13 Alvarenga next asserts the trial court erred by admitting evidence of two separate incidents in which he approached young women in public — one in Pueblo and one in Edgewater. A. Relevant Law ¶ 14 We review a trial court’s evidentiary rulings for an abuse of discretion. People v. Cross, 2023 COA 24, ¶ 9. A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair or when it misapplies the law. Id. ¶ 15 CRE 404(b)(1) prohibits using evidence of a defendant’s uncharged act to prove his character in order to show that he acted in conformity with that character on a particular occasion. But evidence of other acts may nevertheless be admissible for other purposes including to prove the defendant’s mental state and intent. CRE 404(b)(2). ¶ 16 Before admitting CRE 404(b) evidence, a trial court must be satisfied by a preponderance of the evidence that the prior bad act occurred and that the defendant committed the act. People v. Warren, 55 P.3d 809, 814 (Colo. App. 2002). 
7 ¶ 17 To determine whether other act evidence is admissible under CRE 404(b), the court must consider the evidence under the four-
part test set out in People v. Spoto, 795 P.2d 1314, 1318 (Colo. 1990). To be admissible, evidence of other acts must relate to a material fact; be logically relevant to that material fact; its relevance must be independent of the intermediate inference that the defendant has a bad character; and its probative value must not be substantially outweighed by the danger of unfair prejudice. Id. We review nonconstitutional trial errors that were preserved by objection for harmless error. Hagos v. People, 2012 CO 63, ¶ 12. Under this standard, we reverse only if the error substantially influenced the verdict or affected the fairness of the trial proceedings. Id. B. The Pueblo Incident ¶ 18 The prosecution introduced evidence that three months before the incident in this case, a sixteen-year-old girl called police stating she had spent a few days with Alvarenga after he picked her up in 
8 Pueblo and that they had engaged in a sexual relationship.
1 The investigating detective testified that the girl was on foot, and Alvarenga was in his vehicle when they first met, so “he essentially picked her up off the street and then drove her around.” The detective also testified that she had reviewed an interview in which Alvarenga described the girl as his girlfriend and initially denied, but then admitted, having sexual contact with her. ¶ 19 We conclude the trial court properly exercised its discretion to admit this evidence under CRE 404(b). To prove that Alvarenga attempted to kidnap B.O., the prosecution had to establish that he knowingly attempted to seize and carry her. See § 18-1-501(6), C.R.S. 2023 (a person acts “knowingly” with respect to conduct described by a statute when he is aware that his conduct is of such nature or that such circumstance exists). Alvarenga disputed the mental state requirement at trial, arguing that the incident was a “misunderstanding,” and he had simply wanted to borrow B.O.’s phone. On appeal, he argues the Pueblo incident was not relevant 1 The girl ultimately contacted the police in Lakewood. For ease of reference, because Alvarenga picked her up in Pueblo, we refer to this incident in this opinion as “the Pueblo incident.” 
9 to his mental state in this case because he did not menace the girl in Pueblo or make sexual advances toward B.O. We disagree. ¶ 20 Alvarenga’s previous sexual relationship with a teenage girl tended to prove that contrary to his position at trial, he approached B.O. at the bus stop because he liked to have sex with young girls, not that he intended to borrow her phone. See Warren, 55 P.3d at 814-15 (where the defendant denied criminal intent, evidence that he previously engaged in similar conduct was properly admitted as rebuttal evidence and to show knowledge). The evidence was therefore admitted for a proper purpose, logically relevant to a material fact, and independent of a bad character inference. ¶ 21 Like the trial court, we recognize that evidence that Alvarenga was sexually interested in teenage girls is inherently prejudicial. But only unfairly prejudicial evidence, carrying a risk of prejudice that substantially outweighs its probative value, must be excluded. See Masters v. People, 58 P.3d 979, 1001 (Colo. 2002). Alvarenga’s defense turned on his mental state — whether the jury believed that he only intended to ask B.O. to use her phone but that B.O. misunderstood. The probative value of evidence that he approached B.O. for a nefarious purpose — as he had in the Pueblo incident — 
10 was therefore high. And the danger of the evidence being unfairly prejudicial was not so great that it warranted exclusion. ¶ 22 The trial court limited the prejudicial effect of this evidence by instructing the jury, before the testimony was introduced and in the final jury instructions, that it was not permitted to consider the evidence for any purpose other than to prove Alvarenga’s mental state, knowledge, and intent. See People v. Garner, 806 P.2d 366, 374 (Colo. 1991) (Such instructions “safeguard against the potential for the jury’s misuse of the other-crime evidence.”). The court also limited testimony regarding the details of the sexual relationship, and the prosecutor followed this limitation when asking the detective about the Pueblo incident in “a general sense,” even interrupting to ensure “[we] keep it concise.” ¶ 23 Moreover, the prosecutor in closing argument did not emphasize the Pueblo incident or that it involved a sexual relationship. And defense counsel elicited testimony during cross-
examination that the girl in Pueblo had gone with Alvarenga voluntarily and that Alvarenga was adamant that he did not know her age. In light of all of these considerations, we discern no error. 
11 C. The Edgewater Incident ¶ 24 Alvarenga also challenges the court’s admission of evidence that, a month before the incident in this case, a concerned individual called 911 to report a suspicious person in a vehicle who was approaching a young female on foot in Edgewater (the Edgewater incident). The detective testified that he traced the vehicle to the registered owner’s apartment, where the owner indicated that Alvarenga had been driving the car. The detective also testified that he found Alvarenga at the apartment, but he was not able to speak to him due to Alvarenga’s intoxication. ¶ 25 Alvarenga argues this evidence was inadmissible because (1) the prosecution did not prove it occurred or that it was him; and (2) it was based on hearsay, was unfairly prejudicial, and evidence of his intoxication was irrelevant. We agree that evidence of this incident was inadmissible but conclude the error was harmless. ¶ 26 At the outset, we agree with Alvarenga that the prosecution failed to prove by a preponderance of evidence that the Edgewater incident occurred or that he was involved. The only evidence presented was the 911 caller’s statement that a suspicious individual approached a young woman, but that statement was 
12 offered by the detective, not the 911 caller. To the extent it was offered to prove the truth of the matter asserted — that Alvarenga approached a young woman — it was inadmissible hearsay. See CRE 801(c); see also People v. Phillips, 2012 COA 176, ¶ 61 (hearsay is inadmissible because the declarant is not present to explain the statement in context and to be cross-examined, so such statements are presumptively unreliable). ¶ 27 The trial court determined that the prosecution met its burden to prove the Edgewater incident through the vehicle owner’s statement that Alvarenga had been driving the car. But the owner said nothing of Alvarenga approaching a young woman on the street. Apart from the 911 caller’s inadmissible hearsay statements, there was no other evidence that the incident occurred or that Alvarenga was involved. We therefore conclude the prosecution did not meet its initial evidentiary burden, and the trial court erred by admitting evidence of the Edgewater incident at trial.
2 See Warren, 55 P.3d at 814. 2 Because this evidence should have been excluded, we need not consider Alvarenga’s additional arguments that it was unfairly prejudicial under CRE 404(b) or that the detective’s testimony included an irrelevant reference to his intoxication. 
13 ¶ 28 Nevertheless, we conclude the court’s error in admitting evidence of the Edgewater incident was harmless. As an initial matter, the details of the Edgewater incident were relatively benign. The jury only heard that Alvarenga approached a young woman, not that he had sex with her (as in Pueblo) or menaced her with a blade (as at the bus stop with B.O.). ¶ 29 Moreover, the jury verdicts convicting Alvarenga of the charged offenses against B.O. were supported by overwhelming evidence. This evidence included B.O.’s testimony that Alvarenga used a blade and pressured her to get into his car, as well as evidence that Alvarenga had approached B.O. on two prior occasions at the same place, offering her a ride in a “forceful manner.” B.O. testified — and her mother’s testimony confirmed — that she texted her mom to call her when Alvarenga was questioning her and that she called the police immediately after Alvarenga left. The jury also heard evidence that B.O. was visibly afraid when police contacted her, that she identified Alvarenga and Noles immediately, and that she had a “visceral” reaction to seeing them. ¶ 30 As for Alvarenga’s credibility, the responding police officers testified that he changed his story repeatedly, first telling them that 
14 he was in the area to help out his aunt, who has a prosthetic leg, and then saying he had been seeking B.O.’s help to find the hotel he had reserved for a homeless couple. Alvarenga also changed his story regarding the blade found at the scene — first stating that no blade was involved, then stating that “it was a hundred percent possible that his DNA was on that blade,” and then writing a letter to the police chief alleging the blade had been planted at the scene by police. ¶ 31 Based on all of this evidence and the minimal prejudice associated with the Edgewater incident, we conclude that court’s evidentiary error did not substantially influence the verdict or affect the fairness of the trial and reversal is not warranted. See Hagos, ¶ 12. D. No Cumulative Error ¶ 32 Alvarenga contends that the cumulative prejudicial effect of the court’s errors in admitting the other act evidence requires a new trial. To reverse, we must find that numerous errors have actually occurred, not merely alleged. People v. Rivas, 77 P.3d 882, 893 (Colo. App. 2003). But we have only found one error in the other act evidence — the admission of the Edgewater incident. Because 
15 we have not found numerous errors, and the single error we found did not affect the fairness of the trial proceedings, there was no cumulative error. See Howard-Walker v. People, 2019 CO 69, ¶ 24. IV. Hearsay and Confrontation ¶ 33 Finally, Alvarenga separately challenges the trial court’s admission of hearsay, through the Edgewater detective’s testimony, that the 911 caller reported the young female in Edgewater was “on foot.” For the first time on appeal, he further asserts the court’s admission of this testimony violated his right to confrontation. ¶ 34 Even assuming that, unlike the caller’s statements about the Edgewater incident generally, the “on foot” statement was hearsay, we conclude that any error was harmless. See Pernell v. People, 2018 CO 13, ¶ 22 (nonconstitutional harmless error applies to preserved objections to hearsay). The detective properly testified that the woman in Edgewater was approached in public by a man driving a vehicle. That she was “on foot” was not prejudicial, particularly given the fact that B.O. was not on foot but sitting at a bus stop when she met Alvarenga. ¶ 35 For the same reason, we reject Alvarenga’s unpreserved challenge under the Confrontation Clause. See Hagos, ¶ 14 (we 
16 review unpreserved constitutional errors for plain error). Because we have already concluded that any error in admitting the statement is harmless, it necessarily cannot be substantial. Id. (plain error must impair the reliability of the judgment of conviction to a greater degree than under harmless error to warrant reversal). V. Disposition ¶ 36 The judgment is affirmed. JUDGE NAVARRO and JUDGE RICHMAN concur.